**Yasmine FATEMI, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55960.**

Court of Criminal Appeals of Texas.

Nov. 9, 1977.

States's Motion for Rehearing
Denied Dec. 14, 1977.

Bob Kuhn, Austin, for appellant.

Ronald Earle, Dist. Atty., and Charles E. Hardy, Asst. Dist Atty., Austin, Jim D. Vollers, State's Atty., Austin, for the State.

### OPINION

PHILLIPS, Judge.

This is an appeal from an order revoking conditional discharge under Art. 4476–15, Sec. 4.12, V.T.C.S.

On September 15, 1975, appellant pleaded guilty to possession of cocaine and the court ordered she be placed on conditional discharge for a period of two years subject to the condition, inter alia, that she commit no offense against the laws of this or any State or of the United States. On August 2, 1976, the State filed a motion to set aside the order of conditional discharge for a violation of the conditions of discharge; namely, possession of a controlled substance, methaqualone, on or about June 25, 1976. Following a hearing on the State's motion on September 9, 1976, the court ordered the conditional discharge be set aside and adjudged appellant guilty of the primary offense, possession of cocaine. Punishment was assessed by the court at two years; however, imposition of sentence was suspended and appellant was placed on probation for a period of two years.

Appellant contends the trial court erred in admitting, over timely objection, evidence obtained as the result of an unlawful traffic stop and detention.

At the hearing on the motion to set aside conditional discharge, Officer Villegas of the Austin Police Department testified he was on duty on June 25, 1975, around 2:15 a.m. when he noticed a 1969 blue Volvo, with the lights on, parked on the shoulder facing southbound in the 600 block of Robert E. Lee. No one was in the vehicle and the engine was not running. Officer Villegas stated he turned in a "wanted" check on the automobile to determine if it were stolen. While waiting for the check to be run, Villegas circled the block. Finding the vehicle had been moved, Villegas searched the immediate area and then travelled the main thoroughfares, spotting the automobile turning onto Manchacha Road. Villegas testified he "made the traffic stop in the 3400 block of Manchacha Road" and "at this time I wanted to identify the driver." As Villegas approached the driver's side, a lady, identified in court as appellant, stepped out of the vehicle and started to meet him half way toward the rear of the automobile. Villegas asked to see her driver's license and appellant returned to her car and dumped the contents of her purse into the front seat. Villegas saw "a baggie with some type of pills in them". Over objection, Villegas said he asked appellant what the pills were and she replied, "You can have them", handing Villegas the baggie containing two white pills, one yellow one and one black pill. From his experience, Villegas determined the white pills were a controlled substance, "possibly Qualude", and appellant was placed under arrest. Witness Owen, a chemist and toxicologist for the City of Austin, testified the two white pills contained methaqualone and the black capsule contained amphetamine.

Officer Villegas' testimony concerning his reasons for stopping appellant's automobile is as follows:

"A At this time I stopped the vehicle to identify the driver, and I was still waiting for my 'wanted' check to come back from the computer.

Q [BY STATE'S ATTORNEY]: You had not yet gotten your 'wanted' check back?

A No, sir, I hadn't gotten it yet.

A All right, sir.

A So I stopped the vehicle.

Q Now, your purpose in stopping the vehicle you say was to identify the driver?

A Yes, sir, and a return on my 'wanted' check to see if the vehicle was stolen or not.

\* \* \* \* \* \*

Q [BY DEFENSE COUNSEL]: So then after you saw this vehicle who had its parking lights on parked on this roadway, you decided—when you saw that vehicle was gone, you decided you were going to stop that vehicle and make a further investigation?

A Yes, sir.

Q And you say that you stopped it for a traffic stop—I believe that's the term you used?

A This traffic stop being for identification and the 'wanted' check.

Q So you at that time stopped that vehicle to make a driver's license check to see if that person had a driver's license?

A And to identify them and the owner of the car.

Q To identify that person and determine whether or not she owned that car?

A Yes, sir.

Q All right. Did you have any information at that time that that vehicle was stolen?

A Not at the time, no, sir.

\* \* \* \* \* \*

Q Now, at the time that you pulled over this vehicle, that is at the time that you turned on your lights, which was a signal for her to stop, did you have any information that she had violated the law in any form or manner at that time?

A No, sir, I didn't."

Appellant contends the initial detention of her automobile was unauthorized, thus the evidence concerning the pills was inadmissible. The State contends the stop was justified under Art. 6687b, Sec. 13, V.T.C.S., which provides any peace officer may stop and detain any motor vehicle operator for the purpose of determining whether such person has a driver's license.

The State argues the fact that Officer Villegas' "interest might have first been triggered by other suspicious circumstances and no way detracts from" the authority granted by Art. 6687b, Sec. 13, supra. The State's position is "it is only necessary that a purpose in stopping the vehicle was to determine whether the driver had a valid driver's license", whereas appellant contends "the driver's license check must be *the* operative or dominant purpose behind the officer's decision to stop the vehicle."

This Court has upheld temporary detentions authorized by Art. 6687b, Sec. 13, supra, under circumstances which show the check of the driver's license is the *sole* purpose for the detention. See *Tardiff v. State*, Tex.Cr.App., 548 S.W.2d 380 (Department of Public Safety Officers were conducting a routine check of equipment and driver's licenses and were stopping every car on U.S. Highway 83 two miles north of Childress); *Leonard v. State*, Tex.Cr.App., 496 S.W.2d 576 (Arresting officer testified he stopped a station wagon occupied by the defendants to make a driver's license check); *Oliver v. State*, Tex.Cr.App., 455 S.W.2d 291 (Police officers stated they stopped the defendant for a routine driver's license check).

On the other hand, the mere asking for a driver's license will not validate the stopping of an automobile if it is clear the driver's license check was not the reason for the detention. See *Hall v. State*, 488 S.W.2d 788, in which we said the stop of a pickup driven by the defendant could not be upheld on the basis that the defendant failed to give a left turn signal and, although the defendant was asked for his driver's license, could not be upheld under Art. 6687b, supra, because the officer's testimony made it clear the traffic violation was the only reason for the stop and the officer testified he probably would not have detained the defendant had the defendant not violated any laws.

In *Faulkner v. State*, Tex.Cr.App., 549 S.W.2d 1, two Houston police officers

stopped a car driven by the defendant to check his operator's license and to see if the car was stolen. The officers testified they noticed the vehicle because it was being driven slowly and bore out-of-county tags, and the occupants seemed cautious or conscious of the officers' presence. The officers further testified a check of the driver's license was a matter of routine in such situations and thus we determined the real reason for the detention was not the driver's license check but was the cautious driving and the out-of-county tags, together with the officers' "hunch" that the car was stolen. Relying on *Hall v. State, supra,* we indicated the stop was not justified under Art. 6687b, Sec. 13; however, we further said even if this statute did authorize the initial detention, the officers' subsequent actions and investigation exceeded the authority granted by Art. 6687b, Sec. 13, and the fruits of the subsequent search were inadmissible.

Although the record before us is not fully developed, it appears Officer Villegas detained appellant's vehicle not merely to check her operator's license. Officer Villegas appeared to be awaiting the return of the "wanted" check and his request to see appellant's driver's license was, in part, a continuation of the investigation into the ownership of the car. Although Officer Villegas acted lawfully in requesting to see appellant's driver's license, his action in detaining appellant cannot be upheld under Art. 6687b, Sec. 13, if the driver's license check was merely a matter of routine and the actual purpose for the detention was the officer's investigation of the ownership of the car. *Hall v. State, supra* ; *Faulkner v. State, supra.* To hold otherwise would be to ignore the circumstances surrounding a temporary detention and to allow the limited authority granted by Art. 6687b, Sec. 13, to justify any detention as long as the officer asked to see a valid operator's license.

In view of the circumstances here presented, including Officer Villegas' suspicions that the car might have been stolen, his subsequent search for the car on the basis of this hunch, and his decision to ask appellant for her driver's license while awaiting the information concerning the "wanted" check, we find the actual purpose of the temporary detention was not a routine driver's license check and thus the detention was not authorized under Art. 6687b, Sec. 13.

The State further contends Officer Villegas was justified in detaining appellant temporarily, to maintain the status quo while obtaining further information. A temporary detention for purposes of investigation is a lesser intrusion upon the personal security of an individual, and may be justified under circumstances which do not amount to probable cause for arrest. *Mann v. State,* 525 S.W.2d 174. The reasonableness of a temporary detention is determined in light of the specific and articulable facts, together with rational inferences from such facts, which are known to the officer at the time of the detention. *Greer v. State,* Tex.Cr.App., 544 S.W.2d 125. The inarticulate hunch, suspicion or good faith of an arresting officer is insufficient to constitute probable cause for an arrest, search or temporary detention. *Talbert v. State,* Tex.Cr.App., 489 S.W.2d 309.

At the time Officer Villegas approached appellant's car, he knew the following: appellant's car had been parked, with the parking lights on, partially off the side of the road adjacent to a park and across the street from houses and apartments; after Villegas circled the block, the car had been moved; the car was seen a few moments later in the same general vicinity. There is nothing in the record to indicate appellant had committed any traffic violation, that the area in question was a high crime area, or that there was anything unusual about the car's description. The record does not show Officer Villegas had specific and articulable facts such as to justify the temporary detention of appellant's automobile. *Leighton v. State,* Tex. Cr.App., 544 S.W.2d 394; *Tunnell v. State,* Tex.Cr.App., 554 S.W.2d 697. Cf. *Amorella v. State,* Tex.Cr.App., 554 S.W.2d 700.

The judgment is reversed, and the cause remanded.

DOUGLAS, J., dissents.