**Robert Wallace WEST, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69,109.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 17, 1986.

Robert A. Scardino, Jr., Houston, Larry P. Urquhart, Brenham, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr., Carl Hobbs and Wilford Anderson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

Appellant was convicted of capital murder. Upon the jury's return of affirmative answers to the punishment questions, Art. 37.071 V.A.C.C.P., punishment was assessed at death.

Appellant contends that the court erred in permitting the introduction into evidence of his confession. The contention is based upon his allegations that his arrest was unlawful and that the confession was the fruit of that arrest.

The arrest resulted from the immediate investigation of the offense, which occurred in the victim's room at an apartment motel in Houston. Officers were called to the scene by witnesses who had, while socializing in a breezeway just outside the hall that led to the victim's room, heard noises similar to the repeated slamming of a door emanating from the victim's room and had then seen a man, whose clothing appeared to be wet with blood, leaving the room and walking through a set of glass doors and then up a stairway that led to the building's second floor. The three had then entered the building and the victim's apartment and discovered her body. After the police arrived and observed the scene of the offense, one of the officers approached the three witnesses who had summoned them in order to begin an investigation of the case.

At about that time a fourth person, who had not been present at the time of the offense but who believed that she recognized the person described by the three

witnesses as one who was staying in apartment 447A of the motel, approached the officer with that information. The officers then proceeded to that apartment, which was in the direction in which the suspect had gone, in order to investigate further. Upon knocking at the door, the officers were greeted by appellant's companion; appellant was visible about eight feet behind the door, wearing only a pair of shorts.

Appellant and his companion were asked to step into the hall. They complied, and appellant, who fit the description given by the witnesses, was thereupon arrested. His companion, whose room it was, gave his consent to the officers to enter and search.[1] Shortly thereafter, the witnesses were brought upstairs, and they identified appellant as the man they had seen leaving the victim's apartment.

■ Appellant contends that his arrest was unlawful for two reasons. His first contention is that there was no probable cause to believe that he had committed the crime at the time he was arrested. Although the blue jeans had not yet been discovered at that time, and appellant had not yet been positively identified, he matched the description of the suspect given to the police by three eyewitnesses,[2] and he was found in an apartment in the direction in which the suspect had fled. Further, although his companion was fully dressed, appellant was dressed only in a pair of shorts, shortly after the suspect had been seen in blood-soaked clothing.[3] We find the contention that the arrest was without probable cause to be without merit.

Appellant's second stated reason for holding the arrest unlawful is more problematic. Appellant contends the warrantless arrest was not authorized under Chapter 14, V.A.C.C.P. Arrests without warrant are authorized only under the conditions specified by Articles 14.01—14.04, V.A.C.C.P. Arts. 14.01 and 14.02 deal with offenses occurring within the view of peace officers and magistrates, respectively, and are not pertinent to the instant case. Art. 14.03 provides that:

Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws.

It would require a conscious distortion of the concept of "suspicious places" to find the arrest of appellant in the motel apartment occupied by his companion to be authorized under this provision, and the State makes no claim that the instant arrest was so authorized.

The State relies instead upon Art. 14.04. That Art. provides that:

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Appellant takes issue with the State's assertion that the police officers had information which led them reasonably to believe that appellant was about to escape

---

**1.** That search and its fruits, which included the blood-soaked blue jeans, are not at issue here.

**2.** Appellant stresses the fact that the officers did not know the witnesses, asserting that their information was inherently unreliable. We decline the invitation to view with the same suspicion usually reserved for anonymous police informants with an unproven record of reliability information given by citizens who report a crime then freely share what information they have with police without withholding their own names.

**3.** Although we find that there was probable cause to arrest appellant, we note that, even if the facts recited had fallen short of the standard of creating a reasonable suspicion that appellant had committed the offense that had clearly occurred, they certainly constituted articulable grounds to believe that appellant was involved in the offense, justifying his brief detention so that the witnesses could either identify him as the suspect or redirect the attention of the officers by not doing so. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Upon his identification, there can be no doubt about probable cause.

and that there was therefore no time to procure a warrant. Appellant cites: *Pearson v. State*, 657 S.W.2d 120 (Tex.Cr.App. 1983); *English v. State*, 647 S.W.2d 667 (Tex.Cr.App.1983); *Hogan v. State*, 631 S.W.2d 159 (Tex.Cr.App.1982); *Hardison v. State*, 597 S.W.2d 355 (Tex.Cr.App.1980); and *Green v. State*, 594 S.W.2d 72 (Tex.Cr.App.1980). The State's rejoinder relies upon *King v. State*, 631 S.W.2d 486 (Tex.Cr.App.1982). *cert. den.* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188.

In *Pearson*, officers, upon receiving information from an informant that an employee of a bar had shortly before been in possession of tinfoil packets containing heroin, immediately proceeded to the bar and asked the employee to step outside to talk. Once outside, they arrested the suspect without further ado. This Court reversed the conviction, stating that no proof had been adduced that the officers had acted "upon satisfactory proof from representations by a credible person that the appellant was about to escape, so that there was no time to procure a warrant." The opinion adverted to the holding in *Hardison*, a case in which police officers who had been told that the suspect was selling heroin capsules which he kept in his hatband approached him on the sidewalk and asked to see his hat. The officers did not testify to having feared that the suspect might escape or to having believed themselves to have had insufficient time to procure a warrant. But in *Hardison* the opinion stated that "a showing that the offender is about to escape is indispensable. . . ." 597 S.W.2d 357. That rule was discarded in *Fry v. State*, 639 S.W.2d 463 (Tex.Cr.App. 1982), and replaced by the holding that Art. 14.04 "merely requires a showing that the officer was acting upon satisfactory proof. . . ." rather than a showing that the offender was actually escaping. 639 S.W.2d at 476. In *Pearson*, the Court emphasized that even this lesser burden had not been met.

In *Hogan*, the Court was presented with a fact situation that clearly negated any possible contention that the officers had acted in the belief that the suspect might be about to escape. The arresting officer admitted in his testimony that he had no such belief. To have claimed otherwise would have been to dissemble, for "after having been given the name of appellant, a physical description of him and a fairly good idea where he might be found, [the officers] spent approximately three hours driving to downtown Houston, booking the complaining witness for public intoxication and then taking a thirty minute dinner break." 631 S.W.2d at 161.

*Green* and *English* are factually more similar to the instant case than are the cases discussed *ante*. In *Green*, an officer who stopped the defendants for a traffic violation took the serial number of a weapon in their possession. Upon discovering that the weapon had been reported stolen, the officer kept an eye out for the defendants' car, which he espied outside a motel. The officer found that the defendants had registered at the motel and had given a fictitious address, which he testified was in violation of a city ordinance. The officer proceeded to the defendants' room to arrest them; while there, he saw a quantity of heroin which the defendants were charged with possessing. The crux of the appeal was the legality of the arrest. The Court found that the alleged violation of the ordinance did not support the arrests because the ordinance had not been proved up, and also found that the arrest was not supportable with respect to the stolen weapon under the theory that the offense occurred in the officer's presence because of the time that had passed since the officer had made the observation. More germane to the instant case, the Court held that the arrests were not authorized by Art. 14.04 because there was no evidence that the defendants were about to escape. (Although the case appears to have been decided under the former rule as announced in *Hardison, supra*, there was apparently no evidence that the officer believed that the defendants were about to escape. The holding in *Green* effectively counters the State's contention that the mere fact that appellant was found in a

motel frequented by transients would support the belief that appellant was about to escape.)

In *English,* officers investigating an aggravated robbery saw, at an apartment complex, the car used by the robbers. Asking the whereabouts of the car's owner, they were directed to an apartment in the complex. When the officers knocked on the apartment door, a woman answered the door and stated that the owner was in jail, but that she and her husband had use of the car. She refused to call for her husband, who she said was asleep, but when the officers heard a noise described variously as "bumping", "banging", or "rustling", they entered the apartment and arrested the appellant. This Court held that the facts adduced did not support the inference that the defendant was escaping, and reversed the conviction because a bathrobe seized in a search incident to the arrest had been admitted in evidence and identified by the victim. The opinion stressed that the illegality of the arrest was made especially clear by the fact that at the time of the entry the officers were not yet in possession of satisfactory proof that the defendant was the offender whom they sought.

*King* presents us with a set of circumstances unlike those in *English* and *Green.* King was arrested in a rented pickup truck after having been identified by the surviving victim of his offense as the assailant who had raped her and killed her companion. The truck had been stopped earlier because it fit the description of the suspect's vehicle, and an acquaintance of King, who was its lone occupant, had been questioned and had supplied King's name as the renter to the officer who had stopped him. Surveillance had been set up outside the acquaintance's residence, and when, during the surveillance, word of the victim's identification of King's photograph was received, the officers on the scene were instructed that if they saw King they were not to let him get away. A short time later, while the officer who had participated in the photographic identification was still preparing a report to the district attorney's office for use in procuring a warrant, King was seen leaving the acquaintance's residence and entering the truck. He was stopped and arrested shortly afterward. This Court, in affirming King's conviction, stated:

> So, using appellant's own rationale, it is clear that the officers ... also had 'personal knowledge' that the person to whom appellant had loaned [the] truck had been stopped by a uniformed police officer within the preceding two hours and questioned about the truck and its 'owner.' ... the testimony indicates the officers' expectation that appellant would eventually *rendezvous* with Louis in order to retrieve the car keys and the maroon pickup which contained his wallet; thus the stakeout on Louis' house. Thus, there obviously was perceived more than the likelihood that Louis, in person or otherwise, would at such time report to appellant the most recent interest shown by the police in the pickup and its owner. Once probable cause to believe Leon King *had* committed the offense in question was added to these circumstances already within the officers' knowledge, a suspicion that he would attempt to elude the police was well founded. But within ten minutes of the convergence of all these facts, when appellant appeared, entered the pickup and drove away, the 'factual situation' indicating he was about to escape became 'concrete.' [Emphasis in original] 631 S.W.2d at 497-8.

Although the Court was influenced by the fact that King was arrested while driving the truck, the salient aspect of that case remains the officers' reasonable expectation that, their interest in King probably having been made known to him, his interest in evading their reach created a high probability that he would in fact attempt to escape.

One of the factors which must be considered in digesting the cases cited by the parties herein is the availability of reasonable alternative conduct to the arresting

officers consonant with the public and private interests protected by Chapter 14. In *Hardison,* as in *Pearson,* there was nothing in the record to indicate the impracticability of obtaining an arrest warrant based upon information already in the hands of the police prior to their setting out to apprehend the suspect. In *Hogan,* the evidence affirmatively showed that the procurement of a warrant would have been possible in the time spent on other tasks prior to the suspect's apprehension. In *English,* it is clear that the officers could not have procured a warrant prior to inquiring of the occupants of the motel room, in that they had no probable cause for one's issuance. But it is equally clear that once they were denied permission to enter the room, the proper course of action would have been to respect the rights of its occupants and to continue their investigation without unlawfully intruding upon those occupants. Without their *already* unlawful behavior in entering without probable cause or permission, the officers would never have obtained the evidence that gave them probable cause to arrest English. In *Green,* there was probable cause to believe that the suspect was in possession of a stolen weapon, but the *only* reason offered for believing the suspect about to escape was that he was in a motel room. There is no indication in the opinion that Green was aware that the police were "on" to him, and the mere fact that he was at a motel rather than his home was insufficient in itself to permit the inference that he was about to escape. This is especially true in that the motel was in the same city where he had been stopped by the policeman and the stolen weapon inspected, but Green had apparently made no effort to leave before he could be apprehended. It would therefore be reasonable to expect the officers in that case to have procured a warrant before setting out to arrest the suspect.

In contrast to the officers in those cases, the participants in the investigation and arrest of King demonstrated that good police work and lawful procedures in making an arrest can and do go hand in hand. Upon first becoming suspicious of King they took steps both to investigate further without intruding upon any person's reasonable expectation of privacy and to keep an eye out for their suspect and to apprehend him if he fled. Upon verifying that there was probable cause to believe him to be the offender who had raped one victim and murdered another, and upon the realization that it was highly likely that their interest in the suspect would be made known to him, they did not enter upon the acquaintance's premises without a warrant, but positioned themselves to prevent the suspect from leaving those premises and fleeing should he attempt to do so before a warrant could be procured. And they set about procuring a warrant.

The instant case superficially bears more resemblance to *Green* and *English* than to *King.* Appellant was not apprehended in an automobile; like Green, he was in a motel room and had not made any overt move to flee.[4] But the resemblance cuts both ways: although elements of the instant situation were similar to elements of those cases, the elements taken together add up to an entirely dissimilar whole. While the officers in the instant case, like those in *English,* could not state with confidence that they had probable cause to arrest their suspect before at least determining that he was indeed present where they believed him to be,[5] they went about estab-

---

**4.** The State's contention that his having left the immediate scene of the offense constituted flight cannot be seriously considered in this regard. To accept that argument would be to render Chapter 14 nugatory except insofar as it requires probable cause, for those caught *in flagrante delicto* would be arrestable under Art. 14.01 and all other offenders would be amenable to arrest under Art. 14.04.

**5.** *See and compare Woodward v. State,* 668 S.W.2d 337, 343–6 (Tex.Cr.App.1984) (Opinion on State's Motion for Rehearing), in which we held that under the facts of that case, which included grounds for suspicion otherwise falling just short of establishing probable cause, that cause was established when the suspect was found in a place consonant with his having fled the scene of the offense at about the time of its commission.

lishing that probable cause in an entirely different way; instead of forcing their way into the room without the permission of its occupants upon the excuse that they had heard a noise, they saw that the suspect was indeed where they believed the offender might be (and was dressed as one who had shortly before been in blood-soaked clothing might be dressed) while they stood in the hallway outside the room. And the instant arrest was unlike the arrest of Green in two crucial respects: the need to assure that the person seen by the witnesses was in fact the occupant of the room, or at least that someone fitting their description was to be found there,[6] and the fact that the officers in the hallway—merely by showing interest in the occupant of the room—put appellant on notice that he was suspected, as officers had put King on notice by showing an interest in the owner of the pickup truck and in the contents of his wallet.

The questions we shall consider, then, in determining whether the instant arrest was authorized by Art. 14.04, are whether the information available to the arresting officers would justify the belief that appellant would take flight if not placed in custody,[7] and whether the conduct of the officers themselves unnecessarily created[8] the likelihood of such an action by the appellant.

The officers investigating the instant offense had good cause to suspect that the offender was in room 447A, but it was by no means a certainty, and their attempt to confirm that suspicion or to turn their attention immediately to the fresh trail of a recently committed crime rather than to let that trail grow stale while awaiting a warrant for the unnamed person fitting the suspect's description and believed to reside in room 447A was reasonable and necessary. When their knock was answered[9] and they saw appellant inside the room, it was reasonable for them to believe, as it was reasonable for the officers who apprehended King to believe, that their suspect, having been alerted to their interest in him, would attempt to flee.

What alternative course was available to the officers upon discovering their suspect? Had they suggested to him that he could come along or they could procure a warrant, it would have constituted an arrest; acquiescence to accompanying the police for questioning would be no more voluntary than acquiescence to a search under the same conditions. They could not permit appellant and his companion to have unlimited access to the destructible evidence which was in fact present, but, had appellant actually attempted to leave, it cannot be gainsaid that the officers would have been authorized to arrest him as attempting flight. Should they have explained to appellant that they could not arrest him for so long as he stayed on the premises, but that should he attempt to

---

6. We do not hold that it would have been improper to issue a warrant based upon the information already in the officers' hands. The point is that the officers could not have been sanguine in obtaining such a warrant that it would stand up on appeal, in contrast to the officer in *Green* who had himself seen the weapon that he later found had been reported stolen, and who thus knew he had gut-cinch grounds for a warrant. What we do hold is that in the circumstances of the instant case further investigation as performed. by the officers was warranted, and simply constituted good police work.

7. Although the statute refers to " ... the representation of a credible person ... that the offender is about to escape," our opinion in *King* can leave no doubt that it is not the *source* of the officer's belief about that intention, but rather its reasonableness, that is the crux.

8. If, for example, the officers in *Green,* who had ample grounds to procure a warrant, had instead in some lawful but ostentatious manner made their presence and intentions known to Green, they would not be heard to contend that Green, like King, was likely to take flight because he knew of official police interest in him and that it was therefore legitimate to arrest him without first procuring a warrant.

9. We emphasize that in the instant case, unlike *Green* or *English,* the arresting officers did not, forcibly or otherwise, "break the close". In the instant case it is of less import that appellant was in a motel apartment than that he was in the presence of the officers at the time they confirmed the fourth witness' belief that the man described by the first three witnesses might be found in that place.

leave he would be arrested, would that not have constituted an arrest as well as an apparently accurate statement of the law? The officers took what must have seemed to them, and what seems to us, to be the reasonable and logical course; having come lawfully upon the person whom they had probable cause to believe to have committed an offense of which they had first hand knowledge, under circumstances that gave rise to the conclusion that that suspect would flee if permitted to do so, they arrested that suspect.

■ We hold that where, as in the instant case, officers who reasonably believe that further investigation of an offense may be necessary in order to justify the issuance of a warrant, and where those officers undertake that investigation lawfully and without impinging upon reasonable expectations of privacy, and where that investigation leads to the receipt of information which in combination with their other information constitutes probable cause to arrest the suspect, but that information is obtained in the presence of the suspect under circumstances which would lead the officers reasonably to believe that the suspect would take flight if given the opportunity to do so, the officers are authorized by Art. 14 to arrest the suspect without first procuring a warrant.

The arrest having been held lawful, it follows that the confession was not the fruit of an unlawful arrest. The ground of error is overruled.

Appellant also contends the court erred in admitting his confession in that appellant had invoked his right to remain silent prior to making his confession but the interrogation had nevertheless continued.

The court's findings of fact are contrary to appellant's assertion; the court found that appellant had been "very arrogant, denying his involvement, but not exercising any of his rights ..." and that he had "made no request for his attorney or for any of his rights previously read to him." Appellant now contends that "his statements denying guilt and refusing to discuss the offense ... indicated 'in some manner' ... that he wished to remain silent...." Appellant further contends that, by analogy to the rule that the invocation of the right to counsel during interrogation precludes the renewal of interrogation absent some intervening factor, his own refusal to confess upon first request created a similar right not to be questioned.

■ The findings of fact are supported by the record. We do not agree that responses to questioning on the order of denials of involvement, denials of the reports of the witnesses, and the statement that "I don't know how that bitch got killed" constitute the invocation of the right to silence; neither do we accept appellant's contention that silence in response to one question precludes the asking of another. *See Michigan v. Mosely*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Viewing the testimony in the light most favorable to the findings of fact, we find ample support for the finding that appellant never requested that the interrogation cease.

The ground of error is overruled.

Appellant further contends that the court erred in admitting additional parts of his confession at the punishment phase of the trial. The contention is not based upon the nature of the additional material, but upon the same grounds relied upon in the contentions discussed *ante*. For the reasons stated in our discussion of those contentions, the ground of error is overruled.

Appellant next contends the court erred in permitting the introduction over objection, during the punishment phase of the trial, of a Florida "pen packet" that shows appellant to have been convicted of "grand theft second degree" upon a plea of nolo contendere before the court but contains no showing that appellant had waived, or been informed of, his right.to trial by jury.

Appellant relies upon *Samudio v. State*, 648 S.W.2d 312 (Tex.Cr.App.1983), in which this court held that waiver of trial by jury cannot be presumed from a silent record and stated that "insofar as we have researched the decisions of other forums, all are agreed that a waiver of jury can never

be presumed from a silent record, *at least on direct appeal.*" [emphasis added] 648 S.W.2d at 314. Appellant urges us to extend the rule to encompass collateral, as well as direct, attacks.

The State argues both that the rule should not be so extended and that the evidence was admissible, regardless of the validity of the prior conviction, because Art. 37.071, V.A.C.C.P., authorizes the introduction of evidence regarding unadjudicated offenses at the punishment phase of a capital murder trial.

 The records introduced at trial, while silent on the question of jury waiver, were not shown to be the complete records of the Florida offense. The question, then, is not whether records which are silent upon the question of jury waiver can support a conviction, but whose burden it is to show whether the records are indeed silent in a collateral attack such as the one at bar. We hold that in this instance, as in other collateral attacks, that burden is upon the party attacking the validity of the conviction.[10] *See, e.g., Ex parte Alexander,* 598 S.W.2d 308 (Tex.Cr.App.1980). Had appellant shown through the introduction of all the papers in the cause that no waiver was reflected in those records, or had he introduced evidence that Florida law requires such a waiver to be reflected on the face of the judgment, a different case would be presented. Appellant made no such showing, and the ground of error is overruled.

 Appellant contends in two grounds of error that the court erred in excusing two veniremembers. The first of these, veniremember Harris, stated unequivocally

that he would not vote for an answer to a punishment issue that would lead to the imposition of the death penalty and that he believed that to execute a murderer was as wrong as the murder. No objection was taken to his excusal, and nothing is presented for review. *Russell v. State,* 598 S.W.2d 238, 246 (Tex.Cr.App.1980), *cert. den.* 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980); *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976). The second, veniremember Cain, was also unable to consider giving answers that might lead to the imposition of a sentence of death, and Cain's excusal was also unchallenged, presenting nothing for review. The grounds of error are overruled.

Appellant contends finally that the evidence adduced at trial was insufficient to support the jury's affirmative finding on the second punishment issue.[11] Appellant admits that the instant offense can be characterized as "a senseless and brutal killing," but contends that the pen packet and the confession, the objections to the admission of which he reurges in this ground, should not be considered in determining whether sufficient evidence was introduced to support the jury's finding. That contention would be without merit even if we had not found that the court acted within its discretion in admitting the evidence. *Porier v. State,* 662 S.W.2d 602 (Tex.Cr.App. 1984); *Collins v. State,* 602 S.W.2d 537 (Tex.Cr.App.1980). But we did so find, and among the details of the confession was appellant's rationale for committing the murder: appellant and his companion had robbed a man named Longfellow, and appellant had stabbed him in the throat sever-

---

**10.** The State's insistence that their reading of Florida law indicates that Florida, unlike Texas, does not require the waiver of a jury to be reflected upon the judgment itself cannot be considered; we are bound to consider only matters of record. The State's assertion that the offense would be admissible even if unadjudicated ignores the fact that, should the judgment reflected by them be shown to be void, the papers would offer no more than mere hearsay as to the commission of the acts constituting the offense; although the State may, by proper evidence, demonstrate that appellant did commit

the offense, a void judgment would not constitute proper evidence.

**11.** Art. 37.071(b), V.A.C.C.P., provides in pertinent part:

On conclusion of the presentation of the evidence the court shall submit the following issues to the jury:

. . . . .

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society....

al times and left him for dead. The man survived, but a friend of appellant's whom appellant and his companion had requested to pretend to be the companion's lover [12] was killed shortly thereafter. The friend had been seen before his death in the company of the victim, and appellant believed that she had been involved in "setting him up".

Longfellow testified about the robbery and stabbing that had precipitated the chain of events leading to the instant offense. He believed that the person who robbed and stabbed him was appellant, but could not be positive in his identification. Appellant's confession obviates the need for identification testimony. Having once failed at killing, appellant helped to place his own friend in jeopardy and then succeeded upon his next attempt to kill when the danger he had placed his friend in apparently proved fatal to the friend.

█ Appellant's confessed attempt at robbery and murder, in combination with the brutal and cold-blooded nature of the revenge killing in the instant case, provided the jury with ample evidence for its finding upon the issue of future dangerousness.

The ground of error is overruled.

The judgment is affirmed.

TOM G. DAVIS, McCORMICK, MILLER and CAMPBELL, JJ., concur in the result.

ONION, P.J., dissents.

CLINTON, Judge, dissenting.

All that *Fry v. State*, 639 S.W.2d 463 (Tex.Cr.App.1982) did was to point out the obvious proposition that what V.A.C.C.P., Art. 14.04 requires is *not* an objective showing that a suspect is *in fact* about to escape. What is "indispensible" after *Fry* is the showing that police officers *believe* upon *"satisfactory proof"* that he is about to escape. This does not mean, however, that the officers do not have to believe that the escape of their suspect is *imminent*.

Otherwise officers would be allowed to arrest without warrant even when they reasonably believe they have time to procure one. The majority now sanctions warrantless arrest under the terms of Art. 14.04, supra, where officers by their own conduct "create a high probability that [their suspect] would in fact attempt to escape." P. 515. It is hard to imagine a holding more likely to render Art. 14.04, supra, "nugatory."

In support of its analysis the majority relies heavily upon this writer's opinion, writing for the en banc Court, in *King v. State*, 631 S.W.2d 486 (Tex.Cr.App.1982). The majority perceives that in holding as we did in *King* we were merely "influenced by the fact that King was arrested while driving the truck." At p. 515. Careful consideration of that opinion reveals that the majority grievously errs in this respect.

From the fact that King knew or likely must have known that police were looking for him, coupled with probable cause to believe he was in fact their man, "a suspicion that he would attempt to elude the police was well founded." 631 S.W.2d at 497. But a mere "suspicion," however well founded, does not constitute "satisfactory proof." In *Earley v. State*, 635 S.W.2d 528, 531 (Tex.Cr.App.1982) it was observed that "[t]he legislative prescription of what must be 'shown by satisfactory proof' is the legal equivalent of constitutional probable cause." Even a well founded, hence a reasonable suspicion does not amount to probable cause. How then could it serve to establish "satisfactory proof" that King was about to escape? The answer is that it did not, at least not by itself. In fact it was not until ten minutes after "the convergence of all these facts, when appellant appeared, entered the pickup and drove away, [that] the 'factual situation' indicating he was about to escape became 'concrete.'" See *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Cr.App.1973). Thus it is readily apparent that King's having begun

---

**12.** After being picked up by the police, the companion had told them that the offender had been his lover, and appellant and his companion believed that Longfellow could not identify the friend, who had not in fact been involved, as the assailant.

to leave in the pickup was the *dispositive* fact, under the circumstances, establishing "satisfactory proof" upon which the officers could reasonably believe he was about to escape.

It is true that the "concrete facts" which must be "spread on the record" do not have to show an accused was in fact about to escape. *Fry v. State*, supra. Nevertheless there must be concrete facts to support the officers *belief* that the accused would escape, and *imminently*. In *King* the officers' suspicions became concrete, and the imminence of his escape manifest, only when King began to leave in the truck.

In the instant case there is no such concrete fact to substantiate police suspicion that appellant was about to escape. True, once they had presented themselves at appellant's door and expressed an interest in him in connection with the offense, there would certainly have been grounds to *suspect* he might flee. By my understanding of the record, however, the arresting officers had already arrested appellant before they made their purpose known to him. In doing so they also pretermitted any chance that, once appellant found he was discovered, he would himself substantiate their suspicions by, e.g., packing his belongings and leaving. In fact, even after having alerted him to their belief he was the culprit, there is no reason officers could not have "staked out" appellant's room, until either a warrant was obtained or he manifested some objective indication that he did not intend to be found by the time a warrant could be secured.* Cf. *English v. State*, 647 S.W.2d 667, 671 (Tex.Cr.App.1983)

That "officers reasonably ... believe that the suspect *would* take flight if given the opportunity to do so," P. 518, does not amount to "satisfactory proof" justifying the belief that such escape is in fact imminent. While it may well be that "the officers took what must have seemed to them

to be the reasonable and logical course," P. 518, no amount of good police work can circumvent the clear dictates of Art. 14.04, supra.

I dissent.

TEAGUE, Judge, dissenting.

Batten down the statutory law hatches! Get momma and the kids inside! The aggressive and assertive majority of this Court now believes that it is a super-legislature.[1]

In this instance, not only does a majority of this Court act much like a super-legislature might act, but it also teaches us that probable cause to make a warrantless arrest pursuant to Art. 14.04, V.A.C.C.P., may arise merely from "eyeball-to-eyeball" contact between the arresting officer and the accused. Orwell, even though 1984 is now past, are you still listening?

Today, a majority of this Court orders that Art. 14.04, supra, should be rewritten. It rewrites the statute because that is the only way the conviction of Robert Wallace West, Jr., appellant, can be affirmed. I say to the majority: If you do not like the statute as it is presently written, go to the next session of the Legislature and see if you can get it legally repealed. But, please, in the meantime, stop acting like a super-legislature of this State.

The facts leading to the arrest of the appellant reflect that the police were notified that a murder had occurred inside of a motel room. After arrival, the police interviewed several persons, obtaining a description of a suspect and where he might be located—"upstairs in room 447A." The police then went to that room, knocked on the only door to the room, and, after the door was opened, had "eyeball-to-eyeball" contact with appellant, who fit the description of the suspect. The majority opinion

---

* Truly now the Court has abandoned any effect ever given to the language of the statute which provides the "peace officer may, without a warrant, *pursue* and arrest the accused." See *Fry v. State*, supra, at 471 (Clinton, J., concurring in opinion on original submission).

1. Cf. the old saying, "No man's life, liberty or property are safe while the Legislature is in session." 1 Tucker (N.Y.Surr.) 249 (1866). A decision like this one also causes me to exclaim, "no statutory or legal precedent of this Court is safe while this Court is in session."

holds that at that moment in time, when the police had "eyeball-to-eyeball" contact with appellant, "it was reasonable for [the police] to believe ... that their suspect, having been alerted to their interest in him, would [then] attempt to flee." In light of the fact that there was only one door to the room, which was then blocked by police officers, I must ask: Flee to where?

All of the parties in this cause appear to agree that Art. 14.04, supra, controls whether the warrantless arrest of the appellant was lawful. Before a majority of this Court ordered the statute rewritten, it provided:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

A clear reading of the statute should make it obvious to anyone that before a warrantless arrest can be sustained it is incumbent upon the prosecution to satisfy at least three different requirements, *all* of which must be satisfied

A majority of this Court rewrites the statute so that it now reads as follows:

ARTICLE 14.04, V.A.C.C.P.

ARREST WITHOUT WARRANT BASED UPON EYEBALL–TO–EYEBALL CONTACT WITH SUSPECT

Where it is represented to a peace officer by a credible person that a felony offense has been committed, and the whereabouts of the offender is known, it is not then necessary for the peace officer to go and procure an arrest warrant, if he reasonably believes that further investigation of the offense is necessary. If, during his additional investigation, he has eyeball-to-eyeball contact with the suspect, and regardless where the eyeball-to-eyeball contact might take place, he then has the right to arrest the suspect without a warrant.

It should be obvious to anyone that the statute, as rewritten, now provides that a warrantless arrest may occur based upon nothing more than a peace officer's inarticulate hunch or suspicion. Of course, by rewriting the statute, the majority implicitly overrules many, many past decisions of this Court, as well as the Supreme Court of the United States. See, for example, *Brown v. State*, 481 S.W.2d 106 (Tex.Cr. App.1972); *Fatemi v. State*, 558 S.W.2d 463 (Tex.Cr.App.1977); *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Cr.App.1973); and *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). What audacity!

Before this Court commenced acting as a super-legislature and rewriting, rather than interpreting, the law as it was enacted by the Legislature of this State, the law governing warrantless arrests was unequivocal: "The right to arrest without warrant *is conferred and controlled in this state only by statute*, which must be construed in subordination to the constitutional guarantees against unreasonable seizure." (Citations omitted.) (My emphasis.) See *Giacona v. State*, 298 S.W.2d 587, 589 (Tex. Cr.App.1957). Also see *Burton v. State*, 152 Tex.Cr.R. 444, 215 S.W.2d 180 (Tex. Cr.App.1948).

Art. 14.04, supra, as enacted by the Legislature of this State, clearly establishes an objective standard that is designed to control police conduct, i.e., when it comes to the police arresting a suspect without a warrant under the statute, the State has the burden to present articulable facts that would reflect or indicate the following: (1) a credible person represented to a peace officer, by satisfactory proof, that a felony offense had been committed, (2) from that same source, the peace officer was given satisfactory proof that the offender was about to escape, which denotes imminence, *and* (3) based upon objective and articulable facts, there was no time for the arresting officer to procure a warrant of arrest.

Appellant asserts on appeal that his warrantless arrest cannot be sustained under Art. 14.04, supra, as it was enacted by the Legislature, because the arresting officers did not articulate facts that might have reflected or indicated probable cause that

he was about to escape from the motel room. The majority opinion, in spite of the fact that the record does not contain *any* facts that might reflect or indicate probable cause that appellant was about to escape from the room, leaps to the following conclusion: "When their [the police officers'] knock was answered and they saw appellant inside the room, it was reasonable for them to believe ... that their suspect, having been alerted to their interest in him, would attempt to flee." Again, in light of the facts of this cause, I must ask: Flee to where?

Just recently, in *Early v. State*, 635 S.W.2d 532 (Tex.Cr.App.1982), this Court held: "[T]he legislative proscription of what must be shown by satisfactory proof, [to establish flight pursuant to Art. 14.04, supra], is the legal equivalent of constitutional probable cause." Also see *Fry v. State*, 639 S.W.2d 463 (Tex.Cr.App.1982); *Jones v. State*, 565 S.W.2d 934 (Tex.Cr. App.1978); *Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr.App.1978); *Pearson v. State*, 657 S.W.2d 120 (Tex.Cr.App.1983); *Honeycutt v. State*, supra. "Constitutional probable cause," to believe that a suspect is about to escape, is established when the facts reflect or indicate a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the suspect is about to escape. Cf. *Brown v. State*, 657 S.W.2d 797 (Tex.Cr.App.1983). It should be obvious to anyone that the facts of this cause do not reflect or indicate "constitutional probable cause" to make a warrantless arrest pursuant to Art. 14.04, supra.

In sustaining the warrantless arrest of the appellant, the majority opinion gives birth to a rule of law that has long been alien to our law: Citizens of this State are secure in their persons, houses, papers, and effects subject only to the discretion of the police!!!

I respectfully dissent to the majority opinion sustaining the appellant's warrantless arrest. Staff, please lower the Art. 14.04 flag. Thank you. Now that that has been done, I can say "30" to Art. 14.04.