**Opinion issued May 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00366-CR

————————————

**TODD MICHAEL GLOVER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 19-CR-2254**

---

### DISSENTING OPINION

"Don't tell anybody what happened this past weekend."

Without any context, this sinister statement suggests the speaker has something to hide.

Considering the context in which this statement was discovered, the statement is even more disturbing. A Louisiana police officer was investigating a sexual assault, and the victim, who was cooperating with the investigation, received this statement in a text message from the suspect after she was sexually assaulted: "Don't tell anybody what happened this past weekend."

The victim gave her cell phone to the police to confirm her receipt of the text message. The suspect, Todd Michael Glover, was later arrested in connection with the investigation, and the police intended to search the cell phone in his possession for more information about the crime. Detective R. Martin sought a search warrant for the contents of the cell phone, stating the preceding facts.

The majority concludes this information does not provide probable cause to support issuing a search warrant of Glover's cell phone. Because the majority does not apply the correct standard in reviewing the magistrate's probable cause determination, I respectfully dissent.

The main flaw in the majority's reasoning is that the majority refuses to give any deference to the magistrate's probable cause determination or the reasonable inferences he could have made from the information provided in the search warrant affidavit. *See State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022) (stating that court reviewing issuance of search warrant must give "great deference" to magistrate's probable cause determination and "all reasonable inferences"

2

magistrate could have made). This error leads the majority to ignore the facts stated in the affidavit, which are sparse but sufficient to satisfy the standard for search warrants set out in the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 18.01(c); *Baldwin*, 664 S.W.3d at 130. This error also leads the majority to ignore the only logical inference regarding the source of the information and instead apply irrelevant requirements of credibility and reliability reserved for "criminal snitch[es]." *See State v. Duarte*, 389 S.W.3d 349, 356 (Tex. Crim. App. 2012). These errors result in an incorrect reversal of Glover's conviction.[1]

First, the majority incorrectly concludes the search warrant affidavit fails to identify a factual nexus between the cell phone to be searched and the criminal activity described in the affidavit.

But the affidavit easily satisfies the standard set out in the Code of Criminal Procedure for issuing search warrants. A search warrant may only be issued if the affidavit sets forth sufficient facts to establish probable cause, specifically that: (1) a specific offense has been committed; (2) the property or items to be searched for or seized constitute evidence of the offense or evidence that a particular person

---

[1]     Like the majority, I too am puzzled by the State's admission in its appellate brief: "This is a very weak search warrant. And it would be easy enough for this Court to point out all of the deficiencies in the warrant affidavit and be done with it." But rather than decide the outcome of the case based on this poor choice of words, I think we should focus on the State's argument that the search warrant affidavit meets the Code of Criminal Procedure standard for issuing search warrants, which was fully briefed.

committed it; and (3) the evidence to be searched or seized is located on or within the thing to be searched. TEX. CODE CRIM. PROC. art. 18.01(c); *Baldwin*, 664 S.W.3d at 130. The affidavit here indicates all three.

The affidavit indicates a specific offense was committed. Detective Martin stated he was investigating a sexual assault case. The affidavit also identifies Glover as the suspect and states Glover was later arrested in connection with the investigation.

The affidavit indicates Glover's cell phone contains evidence of the offense. The text message Glover is alleged to have sent to the victim days after the sexual assault, asking her not to tell anyone "what happened this past weekend," at the very least suggests Glover knew about the offense, and he may have exchanged other text messages about the offense that would be located within his cell phone.

The affidavit indicates the evidence sought—text messages between Glover and the victim about the offense—are located within Glover's cell phone.

Thus, the affidavit alleges specific facts showing a connection between Glover's use of his cell phone and the offense because the affidavit alleges Glover sent a text message about the offense to the victim within days of the offense. *See Sims v. State*, 526 S.W.3d 638, 645 (Tex. App.—Texarkana 2017) (concluding affidavit was sufficient to support probable cause to search defendant's cell phone when affidavit cited evidence suggesting link between defendant and victim,

described relationship between defendant and victim, and stated information suggesting defendant was involved in offense), *aff'd*, 569 S.W.3d 634 (Tex. Crim. App. 2019); *cf. Baldwin*, 664 S.W.3d at 134–35 (concluding search warrant affidavit relying on "generic, boilerplate language about cell phone use among criminals," with no facts connecting defendant's cell phone to offense, was insufficient to provide probable cause).

The facts alleged in the affidavit support a finding of probable cause. *See, e.g.*, *Martinez v. State*, 660 S.W.3d 179, 194 (Tex. App.—San Antonio 2022, pet. ref'd) (probable cause supported search of defendant's cell phone where victim's phone records indicated she communicated with defendant shortly before she was killed); *Walker v. State*, 494 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (probable cause supported search of defendant's cell phone where defendant communicated with victim shortly before meeting with victim in parking lot where victim was shot); *see also Robinson v. State*, No. 05-12-00859-CR, 2013 WL 5969559, at *3 (Tex. App.—Dallas Nov. 7, 2013, pet. ref'd) (mem. op., not designated for publication) (probable cause supported search of defendant's cell phone where affidavit alleged defendant had been calling and texting victim incessantly before she was shot).

Probable cause is a "flexible, non-demanding standard." *Baldwin*, 664 S.W.3d at 130. Our duty is to ensure the magistrate had a "substantial basis for concluding

that probable cause existed." *Id.* Because the affidavit here alleges Glover sent a text message to the victim about the offense days after it occurred, there was a fair probability that the text message would be found within his cell phone. *See Duarte*, 389 S.W.3d at 354 (explaining that probable cause exists when there is fair probability that evidence of crime will be found at specified location). Thus, the magistrate could reasonably conclude there was a substantial basis to issue the warrant. *See id.* (explaining that test for issuing search warrant is whether reasonable reading of affidavit would lead magistrate to conclusion that affidavit provides substantial basis to issue warrant). And we must give "great deference to [the] magistrate's probable cause determination to encourage police officers to use the warrant process." *Baldwin*, 664 S.W.3d at 130.

Second, the majority fails to defer to reasonable inferences the magistrate could have made and thereby ignores the only reasonable inference that the source of the information in the affidavit—specifically, that the victim received a text message from the suspect—was the victim herself. Ignoring this reasonable inference, the majority concludes the affidavit is fatally deficient because it does not specifically identify the source of the information or offer any facts from which to infer the source was reliable or credible. This does a disservice to the victim, who clearly came forward and reported this crime to the police.

Detective Martin's affidavit states he was investigating a sexual assault case and that he conducted interviews. He does not identify whom he interviewed. However, he asserts that "some of the information that was obtained" in the interviews he conducted was that "after the incident happened, suspect Todd Michael Glover made contact with [the] victim, [K.D.,][2] via text message. The message is alleged to say '[D]on't tell anybody what happened this past weekend.'" Detective Martin also stated that the victim gave her cell phone to law enforcement to "confirm or deny" the text message. The magistrate could reasonably conclude that Detective Martin interviewed the victim, and she told him about the text message she received from the suspect after she was sexually assaulted. In fact, that is the only logical inference about the source of the information.

A citizen informant who is a victim of or witness to a crime "is presumed to speak with the voice of honesty and accuracy." *Duarte*, 389 S.W.3d at 356. When an "unquestionably honest citizen comes forward with a report of criminal activity," any "rigorous scrutiny of the basis of his knowledge [is] unnecessary." *Illinois v. Gates*, 462 U.S. 213, 233–34 (1983). Citizen informants are "inherently reliable,"

---

[2]    The affidavit stated her full name, but it is not reproduced here because the victim was a minor when the offense occurred. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.10(b) (prohibiting courts from using name of person who was minor at time offense was committed).

*Duarte*, 389 S.W.3d at 357, and the affidavit does not need to establish their reliability, *Gonzales v. State*, 481 S.W.3d 300, 308 (Tex. App.—San Antonio 2015, no pet.) (concluding affidavit established probable cause even though bystander witness was not named). We consider a victim's information to be so trustworthy that the "law imposes no requirement that information provided by the victim of an offense be corroborated to support issuance of a warrant." *Jarnagin v. State*, 392 S.W.3d 223, 228 (Tex. App.—Amarillo 2012, no pet.).

The same presumption of honesty and accuracy does not apply to "criminal snitch[es]." *Duarte*, 389 S.W.3d at 356. When an affidavit is based on information from a confidential informant whose motive is "entirely self-serving," the affidavit must also include facts to support an inference the informant is credible or his information is reliable. *Id.* at 356, 358.

By faulting the affidavit for lacking these facts to support credibility and reliability, the majority wrongly imposes the standard reserved for criminal snitches on the victim, who evidently gave Detective Martin the information about the text message she received. *See West v. State*, 720 S.W.2d 511, 513 n.2 (Tex. Crim. App. 1986) ("We decline the invitation to view with the same suspicion usually reserved for anonymous police informants with an unproven record of reliability information given by citizens who report a crime then freely share what information they have with police without withholding their own names."). There is no reason to believe

information about a text message the victim received in this case came from a criminal informant, thus there is no need to allege the source of the information was credible and reliable within the affidavit.

Though *Duarte v. State*, one of the cases on which the majority relies, is instructive on the requirement of supporting a tip from a self-serving criminal informant with other indicia of credibility and reliability, its holding has no application here because we are not similarly dealing with a tip from a criminal informant. *See Duarte*, 389 S.W.3d at 360 (holding search warrant affidavit was insufficient to support probable cause because it was based on uncorroborated tip by first-time confidential informant of unknown reliability).

As in this case, the search warrant affidavit in *Aguilar v. Texas* also did not identify the source of the information, and the United States Supreme Court found that affidavit insufficient. *See Aguilar v. Texas*, 378 U.S. 108, 115–16 (1964), *overruled on other grounds by Gates*, 462 U.S. at 238. However, unlike in this case, the circumstances there did not give any indication as to the source of the information, whereas here, the only logical inference is that the source was the victim herself. In *Aguilar*, the search warrant affidavit stated: "Affiants have received reliable information from a credible person and do believe that . . . narcotics and narcotic paraphernalia are being kept at the above described premises . . . ." *Id.* at 109. No other information was included. *Id.* at 109 n.1.

The "bare bones" affidavit in *Aguilar* does not identify the source or state any facts from which a magistrate could infer the source had personal knowledge of the crime. *See id.* at 113; *see also Gates*, 462 U.S. at 239 (describing affidavit in *Aguilar* as "bare bones"). In this case, however, Detective Martin was evidently working with the victim because she gave her cell phone to the police. He stated he conducted interviews while investigating her case; it is only logical to infer he interviewed her, and she told him about the text message she received. Whereas any number of people can provide anonymous tips in a drug case—an accomplice, a buyer, a rival seller, a neighbor—the only logical source of information about text messages sent to a victim's cell phone in a sexual assault case is the victim herself. The magistrate could easily infer she had personal knowledge of the text message sent to her cell phone.

*Illinois v. Gates*, another case on which the majority relies, strictly cautions against interpreting search warrant affidavits "in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Instead, a magistrate's determination of probable cause "should be paid great deference by reviewing courts." *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969), *overruled on other grounds by Gates*, 462 U.S. at 238). A reviewing court's "grudging or negative attitude" toward search warrants, *id.* (quoting *Ventresca*, 380 U.S. at 108), is inconsistent with the Fourth Amendment's "strong preference" for conducting searches pursuant to a warrant. *Id.*

10

Likewise, the Texas Court of Criminal Appeals has said reviewing courts must "give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process." *Baldwin*, 664 S.W.3d at 130. "When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made." *Id.*

In reviewing a search warrant affidavit, "[t]he focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *Duarte*, 389 S.W.3d at 354–55. By focusing on what is not in the affidavit, the majority fails to review the affidavit "realistically, and with common sense." *See id.* at 354. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

As the United States Supreme Court said in *Gates*:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

11

*Gates*, 462 U.S. at 238–39 (alteration in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled by United States v. Salvucci*, 448 U.S. 83 (1980)).

The magistrate here concluded there was a fair probability that evidence of the crime would be found in Glover's cell phone because, as the magistrate could reasonably infer, the victim said he sent her a text message about the crime days after it occurred. Though we must not rubber stamp an affidavit that is too conclusory to reach any logical conclusion about the location of evidence, there was a substantial basis for the magistrate here, looking at the totality of the circumstances, to conclude the text message about the crime would be located in Glover's cell phone. *See id.*; *Baldwin*, 664 S.W.3d at 130; *Duarte*, 389 S.W.3d at 354.

Because Glover has not shown reversible error in his first issue, I would reach the merits of his other three issues, and I would similarly conclude he has failed to show reversible error. Therefore, I would affirm the trial court's judgment of conviction.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Countiss, and Farris.

Goodman, J., dissenting.

Publish. *See* TEX. R. APP. P. 47.2(b).

12