James STANTON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 1200–84.

Court of Criminal Appeals of Texas, En Banc.

Jan. 20, 1988.

Keith Jones, Amarillo, for appellant.

Danny E. Hill, Dist. Atty. and Daniel L. McBride, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant contends that the jury's verdict finding him guilty of aggravated robbery must be reversed because his warrantless arrest was unlawful under Texas law. Appellant argues that his confession which was given right after this unlawful arrest should therefore have been excluded as a product of an illegal warrantless arrest. The Fort Worth Court of Appeals held that the warrantless arrest of appel-

lant was permissible under Art. 14.04, V.A.C.C.P. because appellant got into his car and "was leaving the premises where they knew he was, so that in that sense he was 'escaping' or 'getting away' from them." *Stanton v. State*, 678 S.W.2d 305 (Tex.App.—Ft. Worth 1984). We granted appellant's petition for discretionary review to determine whether, under the facts, this holding and analysis of Art. 14.04 is correct. We will reverse and remand.

A short time after midnight on January 9, 1983, five masked men robbed the manager and several patrons of the Texas Tumbleweed Restaurant in Potter County. Two of the witnesses told the police that they believed one of the robbers was an ex-employee of the restaurant by the name of Tony Sastaita. Sastaita was arrested at approximately 2:00 a.m. on January 10th and during interrogation admitted his participation in the robbery. He implicated appellant in the crime and later identified appellant from a photo pulled from police files. After speaking with the accomplice Sastaita, the officers knew appellant's first name, the general location where he lived and that he drove a fancy orange Oldsmobile.

At about 5:50 a.m. on January 10th, Officer Fred Perez spotted appellant's car parked in the driveway of a residence. He and several other officers observed the car until about 7:40 a.m. when appellant and his little sister walked out of the house and got into the car. Appellant drove about three blocks when the officers converged, stopped appellant and arrested him.

The State relies upon Art. 14.04 as legal justification for the warrantless arrest.

Art. 14.04 states:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant pursue and arrest the accused.

Officer James Mitchell, one of the arresting officers, testified that he did not get an arrest warrant because the Court was not

open that early in the morning. Mitchell further testified:

Q. Officer Mitchell, at the time of the arrest of Mr. Stanton, is it true that you had no arrest warrant?

A. That is correct, sir.

Q. What was the basis for your arrest?

A. A suspect in a vehicle—moving vehicle and—no, a suspect in a vehicle, moving vehicle, and time to secure a warrant..

Q. Are you saying that you had information that Mr. Stanton was a—was about to flee?

A. I had no knowledge as to whether he was fleeing or not.

Q. Did you have any factual basis to believe that he might be fleeing, other than the fact that he was in a motor vehicle leaving his residence?

A. I did not.

Q. Who was he with when you were arresting him?

A. I believe it turned out to be his little sister.

Q. You have no factual basis to believe that he that he (sic) was going to leave the country?

A. I didn't, no.

Q. If you could, just answer my question.

A. I'm sorry, no, sir, we did not.

Q. Why did you not obtain an arrest warrant?

A. We were waiting for the Court to open up so we could get with the prosecutor and everything, sir.

Q. How long would it have been before the Court opened up?

A. From the time of the arrest, probably an hour.

Q. And, in fact, less than an hour?

A. I guess, sir. I don't know. What, 9:00 are court hours?

Q. That was how long after the offense itself ...

A. From the time of the robbery, sir?

Q. Yes, sir.

A. Twenty-four hours, I would say. More—twenty-four hours, about twenty-eight hours.

Officer Perez testified that "our goal was to—to—if the suspect came out of the house we were to stop him and arrest him." The defense attorney then asked:

Q. Did you have knowledge or any reason to believe that Mr. Stanton was about to leave the city?

Perez: I didn't have any information, no.

Defense Counsel: Were you aware of any other officer who had any such information?

Perez: No.

The Fort Worth Court of Appeals held that since appellant "was leaving the premises where they knew he was"—leaving his residence in a motor vehicle—he was escaping. *Stanton v. State,* supra. The Court of Appeals' opinion states that the arrest was justified under Art. 14.04 "when the suspect was going from one place to another, at a time when the officers did not have time to procure a warrant." *Id.* We believe that such a rationale is incorrect and abrogates the escape provision of Art. 14.-04.

■ The issue before us is whether there is a showing that appellant was "about to escape" so as to permit a warrantless arrest because officers had no time to procure a warrant. From the " 'concrete factual situation' spread on the record," it must be apparent to the arresting officers that the offender is, in fact, "about to escape." *King v. State,* 631 S.W.2d 486, 497 (Tex.Cr.App.1982), citing *Honeycutt v. State,* 499 S.W.2d 662 (Tex.Cr.App.1973), and *Brown v. State,* 481 S.W.2d 106 (Tex. Cr.App.1972). Compare, e.g., *Tarpley v. State,* 565 S.W.2d 525 (Tex.Cr.App.1978) with *Hardison v. State,* 597 S.W.2d 355 (Tex.Cr.App.1980) and *Honeycutt,* supra.

Very recently, in *Dejarnette v. State,* 732 S.W.2d 346 (Tex.Cr.App.1987), this Court formulated a general rule concerning the validity of an arrest conducted under the auspices of Art. 14.04, supra:

[I]n order for an arrest to be justified under the Art. 14.04 exception to the warrant requirement, there must be some evidence amounting to satisfactory proof, either related by a credible person

to an officer or observed by the officer him/herself indicating that the defendant was about to escape so that there was no time to procure a warrant.

Mitchell and Perez both testified that they had no knowledge or factual basis as to whether appellant was fleeing. They simply arrested him as he drove away from his residence with his sister.

*Randall v. State,* 656 S.W.2d 487 (Tex. Cr.App.1983) is virtually indistinguishable from the instant case. In *Randall,* police traced the defendant through his truck which had been spotted at the scene of the crime. Several days after the commission of the offense the officers staked out the defendant's house, waited until the defendant came out of his house, got into his truck, and drove a few blocks. Then, they stopped and arrested him. The arresting officers testified that they had no belief that the defendant was attempting to escape. We held that "there is nothing in the 'concrete factual situation spread on the record,' *King,* supra, from which it can be deduced that appellant was, in fact, about to escape." See also *Bain v. State,* 677 S.W.2d 51 (Tex.Cr.App.1984).

Compare *King,* supra, in which the defendant was stopped and arrested as he drove his truck away from a friend's house. The warrantless arrest was upheld because an additional fact was present—the person to whom appellant had loaned his truck had been stopped by a police officer and questioned about the "owner." We held that the well founded suspicion that the defendant would be informed of such incident and attempt to elude police was a sufficient additional fact to fulfill the escape provision of Art. 14.04, and when viewed together with the fact of the defendant's rendezvous with the friend and subsequent driving away, the warrantless arrest was justified. See also *Bain,* supra, 677 S.W.2d at 56 (Tex.Cr.App.1984); *Fry v. State,* 639 S.W.2d 463 (Tex.Cr.App.1982) (opinion on rehearing).

Also compare *West v. State,* 720 S.W.2d 511 (Tex.Cr.App.1986), in which we upheld the warrantless arrest of the defendant where, immediately after commission of a capital murder, police were at the scene to investigate. Witnesses told police they had seen a man, whose clothing appeared to be wet with blood, leaving the victim's room and going up to the second floor of the apartment motel. One witness told police that the man was staying in apartment 447A of the motel. The officers proceeded to that apartment, knocked on the door, and saw the defendant, clad only in shorts. Appellant was arrested and witnesses identified him as the man seen leaving the victim's apartment.

This warrantless arrest was upheld under Art. 14, V.A.C.C.P., because, in conjunction with probable cause to arrest the defendant, the information was "obtained in the presence of the suspect under circumstances which would lead the officers reasonably to believe that the suspect would take flight if given the opportunity to do so, ..." *West,* 720 S.W.2d at 518.

In the instant case no evidence is presented to show that appellant was escaping or was about to escape. The record does not show that appellant knew that any of his cohorts had been apprehended, or that he had any reason to flee after spending the night at his home. The evidence does not demonstrate that appellant knew of the police stake-out, reflecting their individualized interest in him as a suspect. See and cf. *West v. State,* supra. The police did not themselves have any information that appellant would flee, was fleeing, or was about to escape. See and cf. *Dejarnette v. State,* supra. Appellant's conduct in leaving his own home and driving off was as consistent with innocent as with guilty behavior. The mere fact of driving away from one's own house in the morning a day or so after the offense, without more, is not sufficient to show escape in terms of the statute.

The Court of Appeals holding would essentially abolish the escape provision of Art. 14.04. Under their rationale if a suspect simply walked or drove from his house to the corner grocery store to stock up on groceries he would be "going from one place to another" and thus "escaping." The escape requirement means more than

that. The requirements of a finding that a felony offender is about to escape were explained in *Rutherford v. State,* 104 Tex. Cr.R. 127, 283 S.W. 512, 514–515 (1926):

'The purpose of the statute is to give effect to the guaranty of the Bill of Rights against the unreasonable seizure of the person, and to safeguard the public in the apprehension of offenders whose escape would be effected if a warrant is imperative. It is the information that an escape is imminent which dispenses with the necessity of a warrant of arrest. When it is shown to the officer in the manner prescribed in the statute that an offense has been committed by the person designated, it is the duty of the officer to get a warrant, unless he knows or is advised that the offender is about to escape and there is no time within which to procure a warrant.'

See also *Bain,* supra, 677 S.W.2d at 56.

*Chamberlain v. State,* 453 S.W.2d 490 (Tex.Cr.App.1970), cited by the Court of Appeals does not support their holding. Although Art. 14.04 is cited, the discussion focuses on probable cause required by Art. 14.04, not the escape provision. *Trammell v. State,* 445 S.W.2d 190 (Tex.Cr.App.1969), also cited by the Court of Appeals, is distinguishable on its very different set of facts. In *Trammell,* less than an hour after the offense the defendants were seen in a semi-rural area changing clothes and walking away from the automobile used in the robbery. A 50–officer search ensued in the area, but the defendants managed to escape. The next day, two of the defendants were seen covered with mud and twigs, walking down a street near this area and were arrested. The defendants had escaped once and the officer was not required to leave them to procure a warrant "since he feared their escape." In *Trammell,* supra, there was an escape and the opinion notes that the officer feared their escape. In the instant case the facts show neither.

In the case at bar there is no evidence that appellant was escaping or about to escape. At most, officers may have had "inarticulate hunches and suspicions" which are not enough to validate the warrantless seizure. See *Honeycutt v. State,* supra. It is true that the law does not demand that an officer possess superhuman foresight, but only that he act in a reasonable manner, taking into account the emergency of the occasion. The law does demand, however, that the restrictions of the statute be in good faith observed, not willfully ignored or captiously disregarded. *Rutherford,* supra, 283 S.W. at 515. Since the requirements of Art. 14.04 were not met, the warrantless arrest of appellant was unlawful. We reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals for consideration of the admissibility of the confession in light of our holding that the warrantless arrest was unlawful.

WHITE, J., concurs in the result.

McCORMICK, Judge, concurring.

Although the arrest of appellant would clearly pass constitutional muster, the strict application of Article 14.04, V.A.C. C.P., dictates a different result. Since the Legislature has chosen to allow Article 14.-04, supra, to continue as part of our jurisprudence without clarifying what is intended by the "about to escape" provisions, the courts of this State will continue to wrestle with the problem. The instant case vividly demonstrates the need for such legislative clarification.

With these remarks, I concur in the judgment of the Court.