Joseph Alvin MORELOS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–87–439–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 18, 1989.

Allen C. Isbell, Houston, for appellant.

Cathleen Herasimchuk, Houston, for appellee.

J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a murder conviction. TEX.PENAL CODE ANN. § 19.02 (Vernon 1989). A jury found Joseph Alvin Morelos guilty of murder, as charged in the indictment, and the trial court assessed punishment at life imprisonment in the Texas Department of Corrections. Appellant's five points of error challenge the trial court's overruling his pre-trial motion to suppress and his trial objections to two State's exhibits and an allegedly improper question by the prosecutor. We affirm.

Shortly before midnight on November 15, 1985, Robert Norman Dale died from a gunshot wound to the face and neck inflicted at close range. Earlier that evening, Dale and his wife attended a movie shown at 9 p.m. at a theater in the Baybrook Mall in Houston. They had parked their pickup truck in the lot of the Sears store nearby because the mall parking lot was full. Robert watched only a little of the movie; after complaining of a headache, he left the theater and went to his truck to take a nap and wait for Mrs. Dale.

Mrs. Dale left the theater when the movie ended, shortly after 11 p.m. She walked to the pickup truck, looked in and saw that her husband was asleep. He had stretched out across the seat from a sitting position on the passenger side so that his head was near the steering wheel. As Mrs. Dale started to open the door on the driver's side, she looked up suddenly and saw the appellant open the door of his nearby car, get out quickly, walk around his car and walk directly toward her. She could see a gun in his raised hand. After opening the truck door, Mrs. Dale frantically tried to get inside while trying to rouse her husband. When she looked up, appellant had reached the front of the truck. He was looking directly at her and she got an almost full view of his face. As Mrs. Dale continued to struggle to get inside by trying to push up her husband's shoulders and torso, appellant stepped between the still open door and the driver's seat. Robert had awakened by then and had started to sit up; he only had time to scream before appellant aimed and fired a single, fatal shot into Robert's face at point blank range. Mrs. Dale was still attempting to get further inside the truck, but saw appellant's face a second time as he stood firing at her husband, whose body then slumped into her lap. Appellant aimed and fired two more shots, which hit Mrs. Dale in the arm and the leg, before fleeing in his car. Robert Dale died at the scene.

Police officers interviewed Mrs. Dale at a hospital emergency room later that night.

She told the officers she could recognize the assailant. She and another witness both said the murderer was wearing a green jacket.

Another witness who testified at the trial had attended the same movie as the Dales that evening. He left the theater at approximately the same time as Mrs. Dale. He had also parked near the Sears store and was walking toward the lot when he heard three shots. He saw a man walk briskly away from a pickup truck to a nearby car, get in and speed away. The witness wrote down the license plate numbers and call letters of the fleeing car as "694 GOW." He told the Houston Police Sergeants dispatched to the scene of the murder that he knew the "O" he had written was not correct. Sergeant John Swain knew this was so because Texas does not print the letter "O" on its license plates.

About an hour and a quarter after the killing, at 12:17 a.m., Officer Davidson of the Brazoria County Sheriff's Department saw a car in the ditch by the side of Highway 35 at a location about thirty miles from the Baybrook Mall. Appellant was in the car, a 1980 yellow Plymouth with the license plate 694 GDW. He had driven into the ditch and could not get out. When Officer Davidson investigated, appellant told him he must have fallen asleep and had no idea where he was. The officer could tell appellant had been drinking, although he did not appear intoxicated. Officer Davidson called a wrecker to pull appellant's car out of the ditch.

In the meantime and continuing through the early morning hours of Saturday, November 16, Sergeant Swain had searched twenty-four possible license combinations through the Department of Safety computer, substituting various letters for the "O" the witness had given him. Swaim eventually found a 1980 four door Plymouth with the license plate number, 694GDW, although he had other possible addresses based on different letter combinations. After investigating several of these addresses during the day on November 16, Swain and his associate, Sergeant Johnny Moore, located a yellow 1980 Plymouth in the driveway at 927 Gober Street. They also learned that Joseph *Alvin* Morelos, the appellant, and Joseph *Ernest* Morelos, among others, were apparently living at the address. Believing that the address and car were their "best possibility" based on their investigation, the officers began surveillance at the Gober Street address at approximately midnight that same night.

The officers saw a male jogger enter the house on Gober Street late Sunday evening, November 18. They later learned the man was the appellant. At 6:50 a.m. the next morning, November 19, the officers saw appellant come out of the house at 927 Gober Street, get into the Plymouth and drive away. Sergeant Swain radioed for a patrol unit to stop appellant's car. The officers then proceeded to follow and arrested appellant a short distance away after giving him his legal warnings. After appellant consented in writing to a search of his car, the officers found a black belt, key ring, double clip holder for an automatic weapon, camera, cassette recorder, .38 bullet and a green jacket which appeared to match eyewitness descriptions of the assailant's clothing. Mrs. Dale was transported from the hospital that afternoon to view a lineup. She identified appellant as the murderer without hesitation and also identified him at trial.

When he testified in his own behalf at trial, appellant claimed he was with friends at the house of Curtis Smith until about 10:30 p.m. on the night of the murder. Appellant testified he and Robbie Andrews left Smith's house to eat at a fast food restaurant. Appellant claimed he drove Andrews home, left "to go home" himself at around 11:15 p.m., but then drove alone down Almeda Genoa Road to "waste" time, although he was planning to return to pick up Andrews at 2:30 a.m. to leave on a hunting trip. Appellant admitted wearing a green jacket that night and drinking a substantial amount of alcohol. He also admitted he had placed his gun in the glove compartment of his car early in the evening of the murder. Andrews testified also; he confirmed the appellant was wearing a green jacket that evening.

Appellant's first and second points of error question the trial court's overruling his motion to suppress the items the arresting officers recovered from his vehicle. Both points of error focus on testimony concerning a green jacket the officers seized from the vehicle. In his first point of error, appellant maintains his illegal, warrantless arrest tainted the admissibility of the items and any trial testimony relating to the items. Appellant raises an alternative argument in his second point of error: he concedes he executed a written consent for a search of his vehicle, but claims the form was invalid and therefore tainted the fruits of the search and any related testimony, based either on his illegal arrest or his failure to freely and voluntarily consent. Because the trial court alone resolves factual issues at a hearing on a motion to suppress, we will uphold its decision to overrule appellant's motion, provided it has support in the record. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App. [Panel Op.]), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *accord, Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App. 1986) (en banc), *overruled on other grounds in Juarez v. State,* 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988) (en banc) (appellate court views facts at hearing on motion to suppress in light most favorable to the ruling).

An arrest obtained without a warrant is inherently unreasonable as a general rule. *Beasley v. State,* 728 S.W.2d 353, 355 (Tex.Crim.App.1987) (en banc). Although a case-by-case assessment determines probable cause to support a warrantless arrest under the federal constitution, *e.g., Pyles v. State,* 755 S.W.2d 98, 109 (Tex.Crim.App.) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988), Texas law requires the State to satisfy one of the exceptions set forth in the Code of Criminal Procedure when police fail to obtain a warrant to arrest the accused. *Id.; DeJarnette v. State,* 732 S.W.2d 346, 349 (Tex.Crim.App.1987).

Appellant bases his objections on the exception created by TEX.CODE CRIM. PROC.ANN. art. 14.04 (Vernon 1977), which governs "Arrests when Felony Has Been Committed" and states:

Where it its shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is *about to escape,* so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused (emphasis added).

The statute safeguards against unreasonable seizure of the person and facilitates apprehension of suspects who would escape pending procurement of a warrant. *See DeJarnette,* 732 S.W.2d at 350.

Officers Swain and Moore pursued and arrested appellant without taking the time to procure a warrant when they followed him in his car from the 927 Gober Street address on the morning of November 19, 1985. For Article 14.04 to justify the arrest, the State had to show the officers had "satisfactory proof" that: 1) a felony had been committed; 2) the appellant was the offender; and 3) the appellant was "about to escape." *DeJarnette,* 732 S.W.2d at 349; *accord, Sklar v. State,* 764 S.W.2d 778, 780 (Tex.Crim.App.1987) (citing same).[1]

Evaluating compliance with the "about to escape" exception in Article 14.04 has proved difficult for Texas courts. *See Stanton v. State,* 743 S.W.2d 233 (Tex. Crim.App.1988) (en banc, McCormick, J., concurring). At a minimum, the facts of the particular case, the "concrete factual

---

1. In *Brooks v. State,* 707 S.W.2d 703, 705 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd), our sister court held that the showing required by Article 14.04 is the *equivalent* of "constitutional probable cause." *Contra, Stanton v. State,* 743 S.W.2d 233, 237 (Tex.Crim.App.1988) (en banc, McCormick, J., concurring). To meet constitutional muster, the facts of each case must show that at the moment of arrest, the facts and circumstances which are within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonable person's believing the accused has committed or is committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *E.g., Pyles,* 755 S.W.2d at 109; *Brown v. State,* 481 S.W.2d 106, 110 (Tex.Crim.App.1972).

situation spread on the record," must justify an Article 14.04 arrest. *Stanton,* 743 S.W.2d at 235, quoting *King v. State,* 631 S.W.2d 486, 497 (Tex.Crim.App.) (en banc), *cert. denied,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982); *DeJarnette,* 732 S.W.2d at 352. As a general rule, the arresting officer's personal observations, or information the officers receive from a credible person, can supply the "satisfactory proof," *Stanton,* 743 S.W.2d at 235, and the State need not show that the accused was "actually escaping." *West v. State,* 720 S.W.2d 511, 514 (Tex.Crim.App. 1986) (en banc), *cert. denied,* 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987); *cf., DeJarnette,* 732 S.W.2d at 349; *Fry v. State,* 639 S.W.2d 463 (Tex.Crim.App. [Panel Op.] 1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1430, 75 L.Ed.2d 790 (1983) (opinion on State's motion for rehearing, en banc) (State need not "in fact" prove that offender was about to escape or that there was not time to obtain a warrant). Further, the information before the arresting officer need not convince him beyond a reasonable doubt that the accused would escape to be "satisfactory" under Article 14.04. *DeJarnette,* 732 S.W.2d at 349. Proof is "satisfactory" if it leads the arresting officers to reasonably believe the offender "would take flight if given the opportunity to do so," *Stanton,* 743 S.W.2d at 236, quoting *West,* 720 S.W.2d at 518, so that there is no time to procure a warrant. *Fry,* 639 S.W.2d at 476.

■ In our opinion, the State offered sufficient proof that Article 14.04 justified the warrantless arrest of the appellant. Officers Swain and Moore knew from their investigation and the eyewitness reports that a felony had been committed, thereby satisfying the first element of Article 14.04. They also knew the offender had escaped in a car whose general description matched, and whose license plates might match, the car parked in the driveway at 927 Gober Street, the site of their surveillance.

But the officers were not at all certain of the second element required by Article 14.04, that appellant was the offender. Although their investigation showed a car bearing license number 694GDW registered to the appellant, the officers' initial search for his address revealed only a post office box. Further investigation disclosed that several people, including two Messrs. Morelos, lived at the Gober Street address. The officers had "no idea" what either Mr. Morelos looked like when they began surveillance, although the description of the assailant obtained from eyewitnesses was "close" to the description of appellant the officers obtained through Department of Public Safety license records.[2] Moreover, the officers' search for prior addresses revealed one for appellant, two additional addresses for Joseph *Ernest* Morelos and a third prior address they shared. Under the totality of information apparent to the officers, Robert Dale's murderer was a person meeting appellant's description who might live at 927 Gober Street, where someone had parked what might be the escape vehicle. As of late Sunday, November 17, although Officer Swain conceded there had been *time* to get an arrest warrant, he lacked *basis* for a warrant since nothing more than suspicion connected appellant to the murder.

Only when the officers saw appellant leave the house on the morning of November 18 and enter the suspect vehicle did they have probable cause to believe he was the offender. A similar scenario occurred in *DeJarnette,* when police officers realized, only immediately before his arrest, that the accused met a witness's description of the offender. 732 S.W.2d at 353. By connecting appellant to the offense through the total circumstances perceived by the arresting officers, *i.e.,* the eyewitnesses descriptions *and* his entering and

---

2. Although the officers' investigation showed that appellant was shorter and heavier than Joseph *Ernest* Morelos, both men were under age thirty and had black hair and brown eyes. Accordingly, while the officers later learned that it was appellant whom they saw jogging and returning to the Gober street address late in the evening of Sunday, November 17, nothing beyond a "close" physical description tied him to the offense: the officers were not even certain that the jogger had come from the house they were watching.

driving away in what was probably the suspect vehicle, the officers then had "satisfactory proof" that appellant was the offender, the second element required by Article 14.04. *See King v. State,* 631 S.W.2d at 497. This element, taken together with the officers' awareness that the suspect had previously fled the scene of the murder in what was probably the same car, provided the officers with "satisfactory proof" of the third element: reasonable belief that appellant would take flight again "if given the opportunity." *West,* 720 S.W.2d at 518. As in *Trammell v. State,* 445 S.W.2d 190 (Tex.Crim.App.1969), the officers' knowledge of the suspect's having once escaped justified a fear he would attempt to flee again. *See Stanton,* 743 S.W.2d at 237, *citing Trammell,* 445 S.W.2d at 193; *see also, King,* 631 S.W.2d at 497 (probable cause to believe accused was the offender, coupled with "circumstances already within the officers' knowledge" provided "well founded" basis for suspicion that accused would try to flee).

■ The instant case, like *DeJarnette,* differs markedly from cases like *Sklar* and *Stanton.* In *Sklar,* the court of criminal appeals held that police should have obtained a warrant because they knew the name and address of the accused and their informant gave no indication the accused would attempt to escape. 764 S.W.2d at 780. And although "[t]he mere fact of driving away from one's own house in the morning, without more, is not sufficient to show escape" under Article 14.04, *Stanton,* 743 S.W.2d at 236, that case is also distinguishable. In *Stanton,* the court of criminal appeals held that it would abrogate the escape provision of Article 14.04 to uphold the warrantless arrest of a suspect who was simply going from one place to another when the arresting officer knew the offender's name, knew the place where he was, lay in wait to arrest him if he left that place and admitted there was no *other* reason to justify a belief that escape might occur. 743 S.W.2d at 235. Under the concrete factual situation presented by this

case, we conclude Article 14.04 authorized the officers' warrantless arrest of the appellant.[3]

■ TEX CODE CRIM.PROC.ANN. art. 14.03 (Vernon Supp.1989) provides an alternative basis for the warrantless arrest. Under Article 14.03(a), a peace officer may arrest persons without a warrant who are "found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony." As in *Woodward v. State,* 668 S.W.2d 337 (Tex.Crim.App.1982), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985) (opinion on State's motion for rehearing, en banc), the arresting officers' had a well founded suspicion that appellant was the offender when they saw him driving what the officers reasonably believed was the car in which the suspect had made his getaway. *See Thomas v. State,* 681 S.W.2d 672 (Tex.App.—Houston [14th Dist.] 1984, pet.ref'd) (a "suspicious place" can be any place where a person's actions or the circumstances give rise to a reasonable belief that the person had committed or was committing a felony). Under the totality of information before the officers, Article 14.03 also justified appellant's warrantless arrest.

Although appellant concedes he executed a written consent permitting Officers Swain and Moore to search his car, he disputes that document on two grounds in his second point of error. He first questions his consent "in light of the illegal arrest." While we overrule this contention because we have concluded that appellant's arrest was valid, we note that even an illegal arrest will not categorically exclude evidence obtained as a result of a consent search. E.g., *Juarez v. State,* 758 S.W.2d at 780. Appellant also contends the State failed to show he consented to the search by clear and convincing evidence. We cannot agree.

■ Warrantless searches, like warrantless arrests, are inherently unreasonable. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36

**3.** Although the record lacks testimony by the officers that they believed appellant would es-

cape, this does not preclude our conclusion. *See King,* 631 S.W.2d at 497 n. 20.

L.Ed.2d 854 (1973). But a showing that appellant consented to the search of his vehicle can remove any taint from the evidence seized which would have resulted from: any illegality in the arrest, the arresting officers' acknowledged failure to first obtain a search warrant, or their lack of probable cause to search the car, provided the State offered clear and convincing evidence that appellant "freely and voluntarily" consented. *See Juarez,* 758 S.W.2d at 776, citing *Schneckloth; Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Crim.App.1976); *cf., Brown v. Illinois,* 422 U.S. 590, 601–03, 95 S.Ct. 2254, 2260–61, 45 L.Ed.2d 416 (1975) (voluntary consent which is "sufficiently an act of free will" can even vitiate taint from evidence seized pursuant to an illegal arrest). The totality of circumstances determines whether appellant voluntarily consented to the search of his vehicle. *Juarez,* 758 S.W.2d at 776; *cf., Eishenhauer v. State,* 754 S.W.2d 159, 164 (Tex.Crim.App.) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988) (totality of circumstances test controls probable cause determinations for both warrantless and warrant seizures of persons and property). Voluntariness is a question of fact to be determined from the totality of all the circumstances, *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48.[4]

▇▇▇ While noting the distinction between cases which dispute the accused's consent to search, like *Juarez* and the instant case, and cases which dispute the voluntariness of a confession, like *Brown v. Illinois,* the *Juarez* court nonetheless approved the four factors enunciated in *Brown* as "guidelines" for determining whether the totality of circumstances indicates voluntary consent to a search. 758 S.W.2d at 780. While the factors are "not absolutely controlling," they include: 1) whether the accused received a *Miranda* warning; 2) the time between the arrest and the consent to search; 3) the presence of intervening circumstances; and 4) the

purpose and flagrancy of the official misconduct. *Juarez,* 758 S.W.2d at 780, 781.

Before applying the above factors, we note that the form which appellant signed indicates he had a constitutional right to require a search warrant and could refuse to consent. Appellant nonetheless authorized Officers Swain and Moore to search his vehicle and take any property found therein. The form further recites that the permission "is being given ... voluntarily without threats or promises of any kind and is given with my full and free consent."

Officers Swain and Moore and the appellant testified at the hearing on the motion to suppress. Although appellant denied receiving any warnings until he arrived at the police station, both officers testified that Officer Swain warned appellant of his *Miranda* rights at the scene before attempting to obtain his consent to the search. Since the officers' testimony supports the trial court's denial of appellant's motion to suppress, we are not at liberty to disturb its implied finding that appellant received a *Miranda* warning based only on appellant's disputed version of the facts. *Green,* 615 S.W.2d at 707; *Daniels v. State,* 718 S.W.2d at 704. Accordingly, we conclude the record reflects that appellant received a *Miranda* warning.

The second *Brown* factor is the time between the arrest or stop and the consent. *Juarez,* 758 S.W.2d at 781. The record indicates that very little time passed between the initial stop and arrest and Officer Swain's obtaining appellant's consent. This factor might ordinarily favor an accused, generally indicates a likelihood that "the taint of the *illegal* arrest or stop has not been purged," *Id.* (emphasis added)," but is the "least determinative" of the *Brown* factors. *Id.* The factor is thus of minimal importance when, as in the instant case, the police officers validly arrested the accused.

---

**4.** We refer to *Schneckloth* only for general principles since the Supreme Court expressly narrowed its decision to cases in which "the subject of the search is *not* in custody (emphasis added-

ed)." 412 U.S. at 248, 93 S.Ct. at 2059. Appellant was already under arrest when he executed the consent form.

The facts of appellant's case require that we address the third and fourth factors together: the presence of intervening factors and the purpose and flagrancy of official misconduct. Free and voluntary execution of a written consent to the search is an intervening factor that weighs heavily in favor of the State, *Juarez*, 758 S.W.2d at 782, but allegations of official misconduct in obtaining the consent would necessarily weaken the consent. Here again, however, the record contains conflicting versions of how freely and voluntarily appellant consented to the search.

■■■ Officer Swaim claimed he told appellant he could refuse to consent to a search of his automobile.[5] According to Swain, appellant stated he "didn't mind" and signed the form.[6] Swain denied using physical force and verbal and non-verbal intimidation to coerce the consent and stated that appellant was not handcuffed when he signed the form. Swain also testified that appellant indicated he understood the contents of the form. Appellant claimed Officer Swain coerced his consent by telling him "they were going to search the car and that I might as well go ahead and sign the consent that he was bringing up, because they were going to get a warrant to search the car anyway ... [h]e told me I didn't have any choice, and if I signed it things would go better." Although appellant claimed he was "intimidated" because the officers approached him with drawn guns, he conceded, under cross-examination, that the officers had holstered their guns by the time they had arrested him and placed him in the rear of the police car, where Officer Swain approached him to obtain his consent. He also conceded that no officer struck him at the scene. Faced with these conflicting versions of the incident, we must presume that by overruling appellant's motion to suppress, the trial court impliedly found that the officers did not coerce appellant's consent by over-

reaching or other misconduct and that appellant gave his written consent to the search freely and voluntarily. *Green*, 615 S.W.2d at 707; *Daniels v. State*, 718 S.W.2d at 704.

After applying all four *Brown* factors to the record before us, we conclude that the proof supports the trial court's implied finding that the State offered "clear and convincing" evidence of appellant's free and voluntary consent to the search of his vehicle.

Furthermore, we cannot agree with appellant's contention that the real evidence of the jacket and testimony that the fleeing suspect was wearing a green jacket both contributed to his conviction. Mrs. Dale's pre-trial and trial identification of the appellant were alone sufficient to sustain his conviction. We further note that in his "Statement of Person in Custody," appellant described his clothing on the night of the murder as a "real heavy Army field jacket" which "was that Army green in color ... It's real bright green in color ...." In addition, Robbie Andrews testified the appellant was wearing a green jacket that evening. Accordingly, while we do not agree that the trial court erred in overruling appellant's motion to suppress, we hold that any possible error in admitting the evidence seized from appellant's vehicle was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). After reviewing the entire record, we conclude "that the minds of an average jury would not have found the State's case *significantly less persuasive*" had the trial court granted appellant's motion to suppress. *Smith v. State*, 744 S.W.2d 86, 94 (Tex. Crim.App.1987) (en banc), quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972) (emphasis by court of criminal appeals).

In sum, we find no error in the trial court's denying appellant's motion to suppress because appellant's arrest was valid

---

5. A peace officer need not inform the accused that he has a right to withhold his consent. *Juarez*, 758 S.W.2d at 781 n. 5.

6. Appellant did not object during trial when Officer Swain denied any hesitancy in appel-

lant's signing the consent form. Appellant also failed to object to Swain's testimony that appellant "indicated he didn't have anything to hide, that he was innocent" before signing the consent form.

under either Article 14.04 or 14.03 of the Code of Criminal Procedure and because the State offered clear and convincing evidence that appellant freely and voluntarily executed a written consent authorizing the arresting officers to search his vehicle. Alternatively, we hold that any error in overruling the motion was harmless beyond a reasonable doubt. We overrule the first and second points of error.

In his third point of error, appellant maintains the trial court erred by overruling his objection to State's Exhibit 62, a photograph of the Dale family. Appellant argues the photograph had no probative value and was prejudicial in view of his simultaneous offer to stipulate to the identity of the deceased. He also complains of the prosecutor's referring to the photograph during her closing argument. Before the State offered the photograph into evidence, Mrs. Dale had already testified that she and Robert Dale were husband and wife and that they had three sons, one of whom was her stepson. The photograph depicted those five individuals. There is no error in admitting a photograph when testimony offered without objection shows the same proof. *Brown v. State*, 696 S.W.2d 913, 914 (Tex.Crim.App.1985) (en banc); *Brooks v. State*, 599 S.W.2d 312, 318 (Tex. Crim.App.1979) (en banc); *cf., Green v. State*, 682 S.W.2d 271, 292 (Tex.Crim.App. 1984) (en banc), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985) (a trial court abuses its discretion by admitting a photograph only when the probative value of a photograph is very slight and its prejudicial value very high); *see also*, TEX. R.CRIM.EVID. 403 (exclusion of relevant evidence on special grounds).

Appellant maintains admitting the photograph was highly prejudicial in this case because the prosecutor referred to the photograph in her closing argument, stating that the beauty of the Dale family unit, had been "shattered by the blackness of this defendant's heart." In addressing this contention, we note that appellant failed to object to the prosecutor's reference to the photograph of the Dale family and thereby waived any error, except that which contributed to conviction or punishment, by the combined effect of TEX.R. APP.P. 81(b)(2) & 52(a). *Accord, Sawyers v. State*, 724 S.W.2d 24, 38 (Tex.Crim.App. 1986) (en banc) (steps for preserving claimed jury argument error). But even if appellant had objected, the prosecutor's argument would have been proper in this case as a response to argument initiated by appellant's trial counsel. *See Modden v. State*, 721 S.W.2d 859, 862 (Tex.Crim.App. 1986) (en banc) (response to opposing counsel's arguments is one of four permissible areas of jury argument). Appellant's trial counsel had referred to the "lovely Dale family" and "that fantastic family" at the beginning of his closing argument and referred again to "this family and these wonderful people" as he closed his argument. Under the circumstances, trial counsel invited the prosecutor's comments. Lastly, appellant's verbal offer to stipulate is not dispositive of his contentions because the stipulation was signed only after the jury returned its verdict. We overrule the third point of error.

Appellant's fourth point of error questions the trial court's overruling his objections to the probative value and "inherently prejudicial effect" of admitting two knives seized from his person at the time of his arrest. Texas law generally favors the admissibility of evidence which shows the circumstances surrounding the arrest of the accused, but evidence which is inherently prejudicial or irrelevant to any issue in the case is inadmissible. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim. App.1985) (en banc). The standard for reversible error resulting from admission of such evidence is whether the trial court clearly abused its discretion. *Id.; cf.,* TEX. R.APP.P. 81(b)(2) (to warrant reversal, error must contribute to either conviction or punishment). Although appellant used a gun and not a knife to murder Robert Dale, we hold the State was entitled to show, as a circumstance surrounding appellant's arrest, that the officers found the two knives on his person. *Maddox*, 682 S.W.2d at 565, citing *Williams v. State*, 535 S.W.2d 637,

640 (Tex.Crim.App.1976). Finding no error, we overrule the fourth point of error.

 Appellant's fifth point of error challenges the trial court's overruling his objection to questions the prosecutor posed to Robbie Andrews, his alibi witness, while cross-examining Andrews to impeach his alibi testimony. The prosecutor first questioned him by showing that although he could remember details which took place up until about 11:15 p.m. of the night of the murder, he could not remember whether he and the appellant actually went hunting at 2:30 a.m. as they had allegedly planned. The following exchange took place as the prosecutor was attempting to ask Andrews why he had not come forward earlier with his testimony:

> THE PROSECUTOR: You know, of course, that your friend has been in jail this whole time?
>
> ANDREWS: Yes, ma'am, I do.
>
> THE PROSECUTOR: And even though he's been in jail this whole time, you haven't seen fit to go forward—
>
> APPELLANT'S TRIAL COUNSEL: Your Honor, I would object to that question and the entire subject of that, please. Would we remove the jury please?
>
> THE COURT: Take the jury out.

Appellant moved for a mistrial outside the presence of the jury. He now maintains the prosecutor's question was "highly prejudicial and violated his constitutional right to the presumption of innocence."

 Although appellant complains of the reference to jail confinement, he did not object until the prosecutor's second question. This was not a timely objection to the jail reference. *See* Tex.R.App.P. 52(a) (objection must be "timely"); *accord, Turner v. State,* 719 S.W.2d 190, 194 (Tex. Crim.App.1986) (en banc) (same). But even if appellant had objected, the prosecutor's questions were within the permissibly broad scope of proper impeachment of an alibi witness for bias. *See Koehler v. State,* 679 S.W.2d 6, 9–10 (Tex.Crim.App. 1984) (en banc). Moreover, we find beyond a reasonable doubt that error, if any, in the trial court's ruling made no contribution to

appellant's conviction or punishment because appellant himself had already testified to having been released from jail on bond the day after his arrest. Further, the trial court's charge included an instruction on the presumption of innocence which informed the jury that the fact of arrest, confinement, indictment or other charge does not give rise to an inference of guilt. We may presume the jury followed the court's instruction. *E.g., Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim.App.1987) (opinion on court's own motion for rehearing, en banc). We overrule the fifth point of error.

We affirm the judgment of the trial court.