# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00208-CR

**Ray Salazar, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT NO. 9-03-4121, HONORABLE MIKE LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Ray Salazar of burglary of a habitation with an attempt to commit or the commission of a simple assault. *See* Tex. Pen. Code Ann. § 30.02(a)(3) (West 2003); *see also id*. § 22.01(a)(2), (a)(3) (West Supp. 2004-05) (defining assault). The trial court assessed appellant's punishment at twenty years in prison.

Appellant raises three issues on appeal. He argues that the trial court erred by allowing testimony concerning his status as a jail inmate and in refusing to instruct the jury to disregard such testimony. He also asserts that the court erred by admitting fingerprint testimony in violation of rule of evidence 702. Finally, appellant contends that the court erred by not directing a judgment of acquittal on the basis that the evidence is not sufficient to support a guilty verdict. We will affirm the conviction.

## BACKGROUND

The following summary is drawn from a composite of testimony of the victim, J.R., her parents, Claudia Gutierrez and Carlos Rivas, and Austin Police Department (APD) Officer Jason Staniszewski. On September 6, 2002, J.R., who was eleven years old at the time, awoke at 5:30 in the morning and saw a man sitting at the end of her bed looking at her. The man was wearing a striped shirt, pants, and a blue bandana that covered his face between his nose and chin. Despite the bandana, J.R. recognized appellant as one of her father's friends.[1]

J.R. asked the perpetrator to identify himself. He responded by putting his finger to his mouth. After J.R. threatened to scream for her parents, appellant tried to close her mouth with his hand. Then, appellant reached to the side of her, grabbed a small knife, and touched her cheek with the knife; J.R. testified that the knife had not been there when she went to sleep. Calling on her seven years of karate training, J.R. kicked appellant several times. The kicks forced appellant backwards towards J.R.'s entertainment center. At this point, appellant got up from the floor and ran out of J.R.'s bedroom. J.R. then got out of her bed and ran screaming and crying.

J.R.'s parents, Claudia Gutierrez and Carlos Rivas, heard J.R. scream loudly at 5:30 a.m. Gutierrez ran out of her bedroom first and met J.R. in the living room. Gutierrez noticed that the front door was open and observed the screen door slam shut.

Rivas joined Gutierrez and J.R. in the living room soon after. He noticed J.R. was breathing heavily and listened to her recount the incident with the man in her bedroom. Rivas questioned J.R. to find out whether she had simply experienced a nightmare, but J.R. insisted that

---

[1] J.R. positively identified appellant as the perpetrator of the offense.

it was a real event. J.R. showed him her foot, which she said hurt from kicking appellant's head. At this point, Rivas left the house and drove around the neighborhood to find the perpetrator.

While Rivas searched for the perpetrator, Gutierrez inspected J.R.'s bedroom. She found a bottle of Bud Light on the floor. Gutierrez picked the still-cold bottle off of the floor and placed it on J.R.'s entertainment center. When Rivas returned home, he also examined J.R.'s bedroom. Rivas also observed that the beer bottle was cold and surmised the beer was fresh because there was still a foam puddle on the carpet from the beer spilling on the floor.

Officer Staniszewski responded to a 911 call placed by Rivas and arrived at the scene at 5:42 a.m. Staniszewski listened to J.R.'s account of the events, inspected the room, and found the beer bottle on the entertainment center and a wet spot on the carpet. At trial, Richard Pickell, a latent fingerprint examiner for the Austin Police Department, testified that he examined the bottle of beer and found that the fingerprints on the bottle matched the known prints of Gutierrez, Rivas, and appellant.

Tim Pruett, an APD detective, investigated the crime scene shortly after the incident. Pruett took a written statement from Rivas on September 18, 2002; J.R.'s statement was taken at the Children's Advocacy Center on the same day. Pruett obtained a warrant for appellant's arrest and took him into custody. He further testified that he took a swab sample from the inside of appellant's mouth in June 2003 at Del Valle where appellant was in jail.

Jane Burgett, a DNA analyst for the Department of Public Safety, received a saliva sample from an evidentiary swab of the beer bottle. She testified that she could say with a degree of scientific certainty that appellant was the source of the DNA on the swab from the bottle.

## DISCUSSION

Appellant raises three issues on appeal. He asserts that the court erred by allowing testimony concerning his status as a jail inmate and by refusing to instruct the jury to disregard such testimony. He then argues that the trial court erred in admitting fingerprint testimony. Lastly, he complains that the court erred by failing to direct a judgment of acquittal because the evidence is not legally sufficient to support a guilty verdict.

### Testimony Concerning Appellant's Inmate Status

Appellant contends that the court erred in refusing to instruct the jury to disregard Pruett's disclosure that appellant was in jail when Pruett obtained the oral swab. The testimony came in unsolicited during Pruett's description of how he obtained the oral swab; in response to a question about "what he did" to obtain the swab, he testified that he took the swab kit to the jail where appellant was being held. The court sustained appellant's objection to the revelation that appellant was in jail "to the extent that it limits them from going further into where the sample was taken." The court declined to instruct the jury to disregard the testimony at the time, but in its charge instructed the jury that the fact that an individual has been arrested, confined, or indicted should not give rise to an inference of guilt at his trial.

It is generally presumed that a jury will follow the instructions given by the trial judge. *Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim. App. 1988). This presumption applies when a reference to the fact that the defendant is in jail is made at trial, and when the trial court instructs the jury in its charge that the fact of arrest, confinement, indictment, or other charges does not give

4

rise to an inference of guilt. *See Morelos v. State*, 772 S.W.2d 497, 507 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd).

The testimony originally came in before an objection was raised in large part because the State's question about the swabbing did not solicit disclosure of appellant's location. But we note that the jury knew from previous testimony that appellant had been arrested. Even if the court erred initially by refusing to instruct the jury to disregard the statement that indicated that appellant was in jail, it cured the error by instructing the jury in its charge that confinement in jail does not give rise to an inference of guilt. *See id.* We overrule this issue.

**Admission of Fingerprint Expert Testimony**

In his second issue, appellant asserts that the court erred in its admission of fingerprint expert testimony because the testimony violates rule of evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 provides guidelines for the admission of expert testimony. The rule states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. In assessing whether expert testimony will be admitted to the trier of fact, the trial court must make a "threshold determination" whether that testimony will "help the trier of fact understand the evidence or determine a fact in issue." *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). The trial court must consider two factors in making this determination. *Id.* First, the court considers whether the testimony is sufficiently reliable and relevant to help the trier of fact

reach accurate results. To satisfy this requirement, three criteria must be met with regard to the methods employed by the expert: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id*. at 573. Second, provided the trial judge finds the expert testimony to be reliable, the court must determine whether the testimony is unhelpful for other reasons, for example, the evidence is merely cumulative, confusing, or overly time-consuming. *See id*. at 572. However, some scientific theories are so well-known that they are accepted as matters of common knowledge. *Hernandez v. State*, 116 S.W.3d 26, 34-35 (Tex. Crim. App. 2003) (Keller, P.J., concurring); *Holmes v. State*, 135 S.W.3d 178, 188-89 (Tex. App.—Waco, 2004, no pet.). The concurrence in *Hernandez* specifically cites the use of DNA and fingerprint evidence among other examples of well-known theories. 116 S.W.3d. at 35 (Keller, P.J., concurring); *see also Holmes*, 135 S.W.3d at 189. "In such cases, judicial notice may be taken without a fact finding hearing and without consulting any scientific literature." *Hernandez*, 116 S.W.3d at 35 (Keller, P.J., concurring).

We review the trial court's decision to admit expert testimony for an abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). The appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id*. The appellate court reviews the ruling of the trial court in light of what was before it at the time the ruling was made. *Id*.

Appellant argues that there was no evidence that the three criteria for reliability were met to rightfully admit Pickell's testimony. We disagree. At trial, Pickell testified that fingerprint analysis is recognized and accepted as valid in the scientific community, that there is a procedure

6

used in analyzing fingerprints, and that he had followed the technique in this case. Pickell's testimony satisfies the three criteria for reliability specified in *Kelly*.

Given the fact that fingerprint evidence is accepted as a matter of common knowledge, *see Holmes*, 135 S.W.3d at 189, and given Pickell's testimony regarding the fingerprint analysis in this case, we cannot say that the trial court abused its discretion in admitting the fingerprint testimony. Therefore, we overrule this issue.

**Sufficiency of the Evidence to Support the Conviction**

In his remaining issue on appeal, appellant argues that the court erred because the evidence was not legally sufficient to support the conviction. Specifically, appellant claims there was no evidence or insufficient evidence that he either committed or attempted to commit an assault. A person commits the offense of burglary if, without the effective consent of the owner, the person "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." Tex. Pen. Code Ann. § 30.02(a)(3). A person commits an assault if the person "intentionally or knowingly threatens another with imminent bodily injury" or "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id*. § 22.01(a)(2), (a)(3).

When a court reviews the legal sufficiency of the evidence to support a conviction, it views all of the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In determining whether the evidence is sufficient to convict, we must examine the totality of the circumstances. *Id*.

7

In this case, appellant does not expressly challenge the finding that he was in the victim's habitation without the effective consent of the owner. However, he does call attention to the fact that he was a friend of the family and argues he did not attempt to steal anything. The jury could reasonably conclude that the fact that he was a friend of the family did not provide blanket consent to enter the house or, more particularly, constitute effective consent to enter the house to sit in J.R.'s bedroom in the middle of the night while J.R. was sleeping. Furthermore, the fact that he did not attempt to steal anything would not relieve appellant of criminal liability for a charge of burglary of habitation with an attempt to commit or the commission of a simple assault.

Appellant does argue that there was no evidence or insufficient evidence to show beyond a reasonable doubt that he had either committed or attempted to commit an assault. J.R. testified that appellant put a knife to her cheek—a knife that had not been in her bedroom when she went to sleep. Appellant argues that there was no testimony that his action of picking up the knife was in any way intended to scare J.R. However, his intent to scare the victim is not required to satisfy the elements of the charge. Reviewing the evidence in the light most favorable to the verdict, the jury could have found beyond a reasonable doubt that, under these circumstances, appellant knew or should have reasonably believed that touching a knife to J.R.'s cheek while alone with her in her bedroom at 5:30 a.m. would be regarded as offensive or a threat of imminent bodily injury. *See* Tex. Pen. Code Ann. § 22.01(a)(2), (a)(3). Accordingly, the evidence was legally sufficient to support a finding that appellant entered J.R.'s bedroom and committed or attempted to commit assault.

Therefore, we overrule appellant's final issue.

**CONCLUSION**

8

Having overruled all three of appellant's issues on appeal, we affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   August 31, 2005

Do Not Publish