Affirmed and Memorandum Opinion filed December 8, 2009 



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00831-CR



 

Curtis Green Jr., Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 1144141



 

MEMORANDUM  OPINION

 

Appellant Curtis Green, Jr., challenges his murder
conviction.  After finding appellant guilty, the jury assessed punishment as
confinement for 50 years.  Appellant contends that the trial court erred by (1)
admitting portions of a 9-1-1 tape, which allegedly constituted improper
character evidence; (2) refusing to grant requested limiting instructions; (3)
admitting two autopsy photographs into evidence; (4) allowing a bailiff to
testify; (5) allowing a bailiff to testify in violation of “the Rule;” and (6)
admitting evidence of a prior conviction allegedly taken without counsel during
the punishment phase of trial.  We affirm.

Background

On the evening of November 13, 2007, complainant Patrick
Gims, was sitting outside of the Colony Apartments with a group of people.   Appellant
walked up to Gims and stabbed him in the chest.  Gims tried to run away, but
appellant chased him down.  Gims collapsed in the middle of the street; appellant
jumped on top of him and stabbed him repeatedly.  Appellant eventually stopped
stabbing Gims and went to a nearby Texaco gas station.  Appellant returned a
few minutes later and began stabbing Gims again.  Appellant stabbed Gims 29
times.  This episode was witnessed by multiple people.  

Appellant was arrested at the scene.  Gims was taken
to the hospital by emergency medical personnel and died two weeks later from
his wounds.  

Analysis

Appellant presents six issues on appeal.  We address
each in turn.

I.         9-1-1 Tape

In his first and second issues, appellant asserts
that the trial court erred in admitting portions of a 9-1-1 tape into evidence and
refusing to issue a limiting instruction regarding the tape.  

At trial, the State offered a tape and transcript of three
9-1-1 telephone calls as evidence.  Appellant objected and contended that the
evidence was hearsay; violated appellant’s right to confront witnesses; and contained
improper character evidence.  The State contended that the tape was admissible
as a present sense impression and excited utterance.  The court overruled
appellant’s objections.  Appellant then requested an oral limiting instruction
telling the jury “that they can only consider [the 9-1-1 tape] as the
present-sense impression of the witness and you can’t consider this as
testimony for you to rely upon in convicting the defendant.”  Appellant also
requested that a written limiting instruction including the same language be
included in the court’s charge.  The trial court denied both requests.  

A.        Character Evidence

Appellant first argues that the trial court erred in
admitting the 9-1-1 tape because portions of it constituted improper evidence
of the complainant’s character.  Specifically, appellant complains about the
following statements made on the tape: (1) “That man ain’t never did nothing to
nobody.  He may be drunk all the time but that man ain’t never did nothing to
nobody[;]” (2) “[t]hat man never did nothing to nobody, dog[;]”  and (3) “[h]e
never did nobody no harm.”  Appellant contends that the 9-1-1 tape was
improperly admitted because the specified portions constituted improper
character evidence of the complainant’s peaceable and inoffensive nature in
violation of Texas Rule of Evidence 404(a).

Generally, it is improper for the State to prove that
the victim in a homicide case was peaceable and inoffensive unless the
defendant first has “opened the door” by (1) eliciting evidence of the victim’s
violent character, or (2) asserting his actions were in self-defense.  Tex. R.
Evid. 404(a)(2); Armstrong v. State, 718 S.W.2d 686, 695 (Tex. Crim.
App. 1985), overruled on other grounds by Mosley v. State, 983
S.W.2d 249 (Tex. Crim. App. 1998); Arthur v. State, 170 Tex. Crim. 161, 339
S.W.2d 538, 539 (1960).  Erroneous admission of such evidence is harmless if
other evidence at trial is admitted without objection and proves the same
fact.  Mayes v. State, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991). 

As a threshold matter, the State argues that it is
unclear whether the callers speaking on the 9-1-1 tape were referring to
appellant or to Gims in the quoted excerpts.  Even if they were referring to Gims,
the State contends this evidence was admissible because appellant opened the
door by questioning multiple witnesses on cross-examination about the possibility
that Gims had been fighting or arguing with appellant or appellant’s stepson before
the incident.  The State specifically points to appellant’s questioning of Houston
Police Officer Jose Pena and witness Inez Tiamiyu.  

Pena is a member of the Homicide Division’s Crime
Scene Unit.  Appellant questioned Pena about whether the blood evidence at the
scene supported the possibility of an altercation between two or more people:

Q:        Let
me just tell you this.  How do you know that all the blood that you saw out
there on that particular day is blood that would had to have come from this
altercation as opposed to blood that was put there from some other source, from
some other time?

A:        Well,
the blood wasn’t dry at that point, and I — there — I don’t know which way to
answer that, but there is — I think that it will be impossible for there to be
different sources of blood out there.

Q:        Why
would that be impossible?  Think about this for a second.  You don’t know if
this was just an altercation between two people or if it started out being an
altercation between more than two people, do you?

A:        That’s
correct, no.

Q:        And
if it started out being an altercation with more than two people and somebody
else was cut, you don’t know if the blood that you’re seeing out there is the
blood of Patrick Gims or the blood of somebody else, do you?

A:        That’s
correct.

 

Appellant questioned Tiamiyu
regarding whether Gims had been arguing with someone shortly before appellant
attacked him:

Q:        And
on August 27th of 2008, you’re saying that you were sitting [outside of the
Colony Apartments] for about 15 minutes?

A:        And
I was.

Q:        If
you were sitting out there for 15 minutes, you said that you called for Patrick
[Gims] to come up?

A:        Uh-huh.

Q:        Because
you knew he was arguing with somebody down there?

A:        Right.


Q:        When
he came up there to you, how long — how long did you talk to him before [appellant]
came on the scene?

A:        Only
about a minute or so.

 

      *          *          *

 

Q:        You
said, then, you noticed that [appellant] came up to him and punched him?

A:        Punched
or stabbed, I’m not sure.

 

Based on this record, we conclude that appellant
opened the door to testimony concerning Gims’s peaceable and inoffensive nature
by eliciting evidence regarding the possibility that Gims had been fighting or
arguing before the murder.  See Armstrong, 718 S.W.2d at 695; Arthur,
339 S.W.2d at 539.  Therefore, even if it is assumed that Gims was the person
being referred to in the quoted excerpts, the State was entitled to offer the
9-1-1 tape as rebuttal evidence.  See Tex. R. Evid. 404(a).   

B.        Limiting Instruction

Appellant next contends that the trial court erred in
refusing to grant his requests for an instruction under Texas Rule of Evidence 105
directing the jury to consider the 9-1-1 tape only as a present sense
impression.  Appellant asked the trial court to give a limiting instruction (1)
orally upon admission of the evidence, and (2) in the written jury charge.  

Rule 105 states that “[w]hen evidence which is
admissible as to one party or for one purpose but not admissible as to another
party or for another purpose is admitted, the court, upon request, shall
restrict the evidence to its proper scope and instruct the jury accordingly[.]”
 Tex. R. Evid. 105.  The party opposing admission of the evidence has the
burden of requesting a limiting instruction.  Hammock v. State, 46
S.W.3d 889, 895 (Tex. Crim. App. 2001).  

At trial, appellant requested an instruction to the
jury “that they can only consider [the 9-1-1 tape] as the present-sense
impression of the witness and you can’t consider this as testimony for you to
rely upon in convicting the defendant.”  On appeal, appellant does not argue
that the trial court erred in denying his request for the limiting instruction articulated
during trial.  Rather, appellant argues that the trial court should have issued
an unspecified limiting instruction because the 9-1-1 tape contains improper
character evidence: “Admission of the improper character evidence showing the
lifelong peaceful nature of the Complainant, without any limitation as
requested by Appellant, served only to contrast the Complainant’s character
with that of the Appellant.”  

A party must preserve error for appeal by a proper
objection and an adverse ruling on that objection.  Tex. R. App. P. 33.1; Tex.
R. Evid. 103(a).  Arguments on appeal must comport with the objection at trial
or the error is waived.  Dixon v. State, 2 S.W.3d 263, 273 (Tex. Crim.
App. 1998); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)
(to preserve error for appellate review, complaint on appeal must comport with
objection at trial, and objection stating one legal theory may not be used to
support a different legal theory on appeal).  Appellant’s argument on appeal
does not comport with his objection at trial.  Therefore, the claimed error is
waived.  See Dixon, 2 S.W.3d at 273; Broxton, 909 S.W.2d at 918. 
    

In any event, appellant’s complaint provides no basis
for reversal even if it had been preserved.  Statements admitted as present
sense impressions or excited utterances[1]
are admissible for all purposes and are not subject to a limiting instruction. 
See Green v. State, No. 07-06-0367-CR, 2007 WL 923081, at *2 (Tex.
App.—Amarillo March 28, 2007, no pet.) (mem. op., not designated for
publication) (“Being an excited
utterance, [the statement] was admissible free of any limiting instruction despite its supposed hearsay nature.”);
Cockrell v. State, No. 04-05-00767-CR, 2006 WL 2955325, at *3 (Tex.
App.—San Antonio Oct. 18, 2006, pet. ref’d) (mem. op., not designated for
publication) (“A statement admissible as an excited
utterance is admissible as an exception to the hearsay rule.  Accordingly, if
the trial court admitted the statements as excited utterances, the statements
were admissible for all purposes and were not subject to a limiting
instruction.”); Alli v. State, No. 01-04-00448-CR, 2005 WL
428231, at *3 (Tex. App.—Houston [1st Dist.] Feb. 24, 2005, no pet.) (mem. op.,
not designated for publication) (“The record shows
that Magdalene’s statements to the peace officers were admissible as excited
utterances.  A limiting instruction
would thus have been improper because her statements were admitted for all
purposes at trial and could be properly used by the jury as primary evidence of
appellant’s guilt.”).  Therefore, the trial court did not err in denying
appellant’s request for a limiting instruction. 

We overrule appellant’s first and second issues.    

II.        Autopsy
Photographs

In his third issue, appellant asserts that the trial
court erroneously admitted two autopsy photographs into evidence during trial
in violation of Texas Rule of Evidence 403.  Appellant does not challenge
admission of 12 other autopsy photographs; appellant contends these two
photographs were objectionable and differed from the other photographs because they
were “utterly gory” and depicted “a naked body cut almost in half by postmortem
surgical intervention.”[2] 
  

 “Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.”  Tex.
R. Evid. 403.  The admissibility of photographs is within the trial court’s sound
discretion, and we will not reverse the trial court’s ruling unless it falls
outside the zone of reasonable disagreement. 
Resendiz v. State, 112 S.W.3d 541, 544 (Tex. Crim. App. 2003); Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App.
1995).  

Courts consider many factors in determining whether
the probative value of autopsy photographs is substantially outweighed by the
danger of unfair prejudice, including (1) the number of exhibits offered; (2)
their gruesomeness; (3) their detail; (4) their size; (5) whether they are in
color or black-and-white; (6) whether they are close up; (7) whether the body
depicted is clothed or naked; (8) the availability of other means of proof; and
(9) other circumstances unique to the individual case.  Shuffield v. State,
189 S.W.3d 782, 787 (Tex. Crim. App. 2006); Santellan
v. State, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).  Autopsy photographs
are generally admissible unless they depict mutilation
of the victim caused by the autopsy itself.  Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim.
App. 2001); Santellan, 939 S.W.2d at 172.  

Appellant contends that the probative value of
State’s exhibits 30 and 32 was diminished, and the prejudicial effect was heightened,
because the photographs showed damage to Gims’s body caused by a subsequent
autopsy.  State’s exhibit 30 depicts Gims’s upper torso displaying two stab
wounds.  It also depicts (1) a large surgical incision across Gims’s chest made
while surgeons were rendering emergency treatment to Gims, and (2) a chest
tube.  The incision runs the length of Gims’s chest and appears to be
approximately three inches wide.  The incision is not closed.  State’s exhibit
32 depicts the left side of Gims’s upper torso including a portion of his left
arm displaying two stab wounds.  It also depicts (1) a portion of the above
mentioned surgical incision, (2) a chest tube, and (3) a previous incision for
a chest tube.  

Both exhibits are close ups of Gims’s upper body and
torso; they do not depict the body in an inflammatory manner.  These exhibits are
the only photographs depicting these four stab wounds, so they are not
duplicative.  Both exhibits appear in the record on appeal as 8” x 10” black-and-white
photographs.[3] 


Contrary to appellant’s contention on appeal, the
large incision and chest tube were not the result of an autopsy; they were the
result of life-saving attempts by medical personnel.  Dr. Dwayne Wolf, Deputy
Chief Medical Examiner for Harris County, testified about the life-saving
attempts that left (1) the surgical incision across Gims’s chest, (2) the chest
tubes, and (3) the previous chest tube incisions.  Dr. Wolf explained that the
surgical incision was not closed because medical personnel had difficulty
closing it.  He distinguished damage attributable to the initial stab wounds
from damage attributable to medical personnel’s life-saving attempts.  Dr. Wolf
used State’s exhibits 30 and 32 to explain the cause of Gims’s death.  

After considering all of the relevant factors, we
conclude that the probative value of State’s exhibits 30 and 32 is not
substantially outweighed by the danger of unfair prejudice.  The trial court
did not abuse its discretion by admitting them.  Resendiz, 112 S.W.3d at
544; Sonnier, 913 S.W.2d at 518.  

We also note that appellant did not object to State’s
exhibit 31.  Exhibit 31 is another 8” x 10”, black-and-white photograph.  It is
a close up of Gims’s upper body and torso displaying three stab wounds on Gims’s
right arm and the right side of Gims’s abdomen.  The photograph also depicts
(1) a portion of the surgical incision, (2) a chest tube, and (3) a previous
chest tube incision.  State’s exhibit 31 depicts the same damage caused by
medical personnel’s life-saving attempts that State’s exhibits 30 and 32
depict.  Therefore, any asserted error in the admission of State’s exhibits 30
and 32 was harmless.  See Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998) (“[O]verruling an objection to evidence will not result in
reversal when other such evidence was received without objection, either before
or after the complained-of-ruling.”).  

We overrule appellant’s third issue. 

III.      Bailiff’s
Testimony

In his fourth and fifth issues, appellant contends
that the trial court erred in allowing a bailiff to testify in violation of
“the Rule.”  Harris County Sherriff’s Department Deputy David Clingan testified
at trial about statements made to him by Kendra Williams, a witness for the
appellant, on whom Clingan served a writ of attachment.  Williams did not
comply with the court’s subpoena to appear as a witness.  As a result, the
court issued a writ of attachment that Clingan executed on the morning of
August 26, 2008.  

While escorting her to the courthouse, Clingan
initiated a conversation with Williams regarding her testimony.  On the morning
of August 27, 2008, Clingan told the prosecutor that “she might want to go have
a conversation with [Williams].”    After the prosecutor talked to Williams, she
spoke with Clingan again regarding his conversation with Williams.  The
prosecutor then informed Clingan that she might call him as a witness to
impeach Williams, if necessary.  This situation was brought to the trial
court’s attention, and the trial court held a hearing the afternoon of August
27, 2008.  Appellant objected to Clingan testifying, arguing that his
credibility with the jury would be bolstered because he was serving as a
bailiff in this case.  The trial court overruled appellant’s objection.   

Appellant called Williams to testify during the
afternoon of August 27, 2008.  Williams testified in support of appellant’s
self-defense and defense-of-third-person claims.  Williams testified that she
witnessed three altercations between appellant, appellant’s stepson, and Gims. 
She further testified that Gims had a knife during these altercations.  She
also testified that one of appellant’s girlfriends came by her house and
offered to pay for her son’s shots so that she could testify in court on behalf
of appellant.  

The State called Clingan to testify the next
morning.  Clingan testified that he initiated a conversation with Williams
about “why the defense wanted [her] so badly.”  Clingan testified that Williams
told him “probably because she was the one that was trying to pull [appellant]
off that man and make him go home before the police got there.”  Clingan
testified that Williams never mentioned anything about multiple altercations
between appellant, appellant’s stepson, and Gims, or Gims having a weapon. 
Clingan also testified that Williams told him two of appellant’s girlfriends
had stopped by her house that morning and offered her $20 to come to court with
them.

Appellant first argues that the trial court erred in
allowing Clingan to testify because his credibility with the jury was bolstered
by serving as a bailiff in this case.  Article 36.24 of the Texas Code of
Criminal Procedure provides as follows:

The
sheriff of the county shall furnish the court with a bailiff during the trial
of any case to attend the wants of the jury and to act under the direction of
the court.  If the person furnished by the sheriff is to be called as a witness
in the case he may not serve as bailiff.  

 

Tex. Code Crim. Proc. Ann.
art. 36.24 (Vernon 2006).  When a bailiff does testify, reversal is not
automatically mandated; rather, we must determine whether there has been a
showing of harm or prejudice as a result of the bailiff’s dual role.  Walker
v. State, 2 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 1999, pet.
ref’d); see Criado v. State, 438 S.W.2d 557, 560 (Tex. Crim. App.
1968).  To determine whether the appellant has demonstrated prejudice, we
examine the particular facts of this case to determine what, if any, impact the
bailiff’s testimony had on the jury.  See Criado, 438 S.W.2d at 560; Walker,
2 S.W.3d at 658.   Important factors to consider in making this
determination are (1) the bailiff’s association with the jury, and (2) the
importance of his testimony.  See Ex parte Halford, 536 S.W.2d 230, 233
(Tex. Crim. App. 1976); Walker, 2 S.W.3d at 658; Jones v. State,
No. 09-06-126-CR, 2007 WL 1364629, at *6 (Tex. App.—Beaumont May 9, 2007, no
pet.) (mem. op., not designated for publication).  

In Jones, the appellant argued that the trial
court erred in permitting a bailiff to testify because the bailiff’s
credibility would be bolstered with the jury.  Jones, 2007 WL 1364629,
at *6.  The bailiff testified during the punishment phase that the appellant
told him “he was going to do whatever it took to get out of his criminal case
and he was going to do whatever it took to escape.”  Id. at *4.  The
court overruled the appellant’s argument, stating that the bailiff’s testimony
was “very brief and confined to the issue of Jones’s threat to escape[.]”  Id.
at *7.  The court also noted that the bailiff had only limited contact with the
jury involving answering the jurors questions, providing work excuses, and receiving
three notes from the jury for the trial judge during the guilt/innocence phase
of trial.  Id.  The court stated that the bailiff’s “testimony did not
concern a key element of the State’s case.”  Id.              

In Walker, the court analyzed the
bailiff-witness rule in the course of addressing the appellant’s claim that he
received ineffective assistance of counsel.  Walker, 2 S.W.3d at
658-59.  The appellant argued that his attorney failed to object to the
testimony of a bailiff-witness during the punishment phase of trial.  Id.
at 656-57.  The bailiff testified that the appellant told him during a lunch
break that once he was out of prison he would have to “take care of some
salt.”  Id. at. 657.  The court held that the appellant’s counsel was
not ineffective for failing to object to the bailiff’s testimony because there
was insufficient evidence to show that the appellant suffered harm from the
bailiff’s testimony.  Id. at 659.  The court stated that the bailiff’s
testimony did not have a significant impact on the trial because of “the nature
and brevity of the bailiff’s testimony and the lack of any evidence that the
bailiff had any significant contact with the jury[.]”  Id. 

In this case, Clingan did not have significant
contact with the jury.  Clingan escorted (1) the venire panel into the
courtroom; (2) the empanelled jurors to the jury room after they were selected;
and (3) the jury into the courtroom the morning of August 27, 2008.  He also
answered the empanelled jurors’ questions following their selection, and
provided them with work excuses.  Clingan had no further contact with the jury
after the morning of August 27, 2008.  Further, Clingan’s testimony was brief
and confined to what Williams told him during their conversation.  Additionally,
his testimony was used to impeach Williams’ testimony; it was not used to prove
a key element of the State’s case.  On this record, appellant has not
demonstrated he was prejudiced by Clingan’s testimony.  See Ex parte Halford,
536 S.W.2d at 233; Walker, 2 S.W.3d at 658; Jones, 2007 WL
1364629, at *6.   

Appellant also argues that Clingan should not have
been allowed to testify because appellant invoked “the Rule” and Clingan was
not excluded from the courtroom.  Appellant did not raise this objection at
trial.  A party must preserve error for appeal by a proper objection and an
adverse ruling on that objection.  Tex. R. App. P. 33.1; Tex. R. Evid. 103(a). 
Therefore, appellant presents nothing for review on this issue.          

We overrule appellant’s fourth and fifth issues.     

IV.      Prior Conviction

In his sixth issue, appellant contends that the trial
court erred in admitting appellant’s 1993 conviction for unlawfully carrying a
weapon during the punishment stage of trial because this conviction is void. 
Appellant contends this conviction is void for enhancement purposes because he
was not represented by counsel in connection with the 1993 conviction.

A defendant may collaterally attack a prior
conviction admitted during the punishment stage for enhancement purposes if the
prior conviction is void or tainted by a constitutional defect.  Galloway v.
State, 578 S.W.2d 142, 143 (Tex. Crim. App. 1979); Valdez v. State,
826 S.W.2d 778, 783 (Tex. App.—Houston [14th Dist.] 1992, no pet.).  A prior
conviction is void if the defendant is indigent and is not represented by
counsel, unless he waived his right to counsel.  Ex parte Olvera, 489
S.W.2d 586, 589 (Tex. Crim. App. 1973).  To collaterally attack the validity of
prior convictions on the basis of a denial of the right to counsel, the accused
must prove that he did not voluntarily, knowingly, and intelligently waive his
right to counsel.  Disheroon v. State, 687 S.W.2d 332, 334 (Tex. Crim.
App. 1985); Swanson v. State, 722 S.W.2d 158, 164 (Tex. App.—Houston
[14th Dist.] 1986, pet. ref’d).  When prior convictions are collaterally
attacked, the judgments reflecting those convictions are presumed to be regular
and the accused bears the burden of defeating that presumption.  Swanson,
722 S.W.2d at 164.  Bald assertions by a defendant that he was without the
assistance of counsel at his prior conviction are not sufficient to overcome
the presumption of regularity of the judgments.  Disheroon, 687 S.W.2d
at 334; Swanson, 722 S.W.2d at 164.  The fact that a judgment is silent
as to named counsel alone is insufficient to overcome the presumption of
regularity.  Chancy v. State, 614 S.W.2d 446, 447 (Tex. Crim. App.
1981); Ex parte Swinney, 499 S.W.2d 101, 103 (Tex. Crim. App. 1973).       

In this case, the judgment in appellant’s 1993
conviction for unlawfully carrying a weapon is a pre-printed form with spaces
for the court to fill in the pertinent information.  In the space provided for
the court to identify the “Attorney for Defendant,” the court wrote “unknown.” 
There are also two boxes at the end of the line for the court to check
indicating whether defendant’s attorney was “appointed” or “retained.”  Neither
box is checked.  The next line on the form states “Waiver of Attorney” and
contains the following recital: “The Defendant knowingly, intelligently, and
voluntarily waived the right to representation by counsel.”  The corresponding
box is not checked.  Neither appellant nor the State introduced any other
evidence regarding this conviction.  

Appellant stresses that the judgment indicates it is “unknown”
whether he was represented by counsel.  Appellant introduced no other evidence
or testimony regarding whether he was represented by counsel in his 1993 conviction
for unlawfully carrying a weapon.  Appellant bears the burden of overcoming the
presumption of regularity of the judgment.  Swanson, 722 S.W.2d at 164. 
Nothing in the judgment establishes that appellant was not represented by
counsel.  The fact that appellant’s counsel was not named is insufficient to
overcome the presumption.  See Chancy, 614 S.W.2d at 447. Based
on the record before us, appellant has failed to overcome the presumption of
regularity.  Chancy, 614 S.W.2d at 447; Swanson, 722 S.W.2d at
164.   

Appellant, relying on Samudio v. State, 648
S.W.2d 312 (Tex. Crim. App. 1983), also argues his conviction for unlawfully
carrying a weapon is void because the record does not contain an affirmative
waiver of counsel.  In Samudio, the record contained no evidence of the
defendant waiving his right to a jury trial.  Id. at 314.  The court
held that a waiver of a jury trial could not be presumed from a silent record
in a direct appeal, and that the burden of proving waiver of a jury trial was
on the State.  Id.  This holding has not been extended to collateral
attacks.  West v. State, 720 S.W.2d 511, 518-19 (Tex. Crim. App. 1986). 
The party collaterally attacking the conviction has the burden of bringing
forward the entire record to show that it is silent regarding waiver of a jury
trial.  Id. at 519. 

Appellant has cited no case law supporting his
argument that the holding in Samudio applies to waiver of counsel. 
Further, appellant has failed to bring forward the entire record from his
conviction for unlawfully carrying a weapon.  Therefore, even if we were to
find that Samudio applied to waivers of counsel, appellant has failed to
meet his burden of presenting a complete record for our review.  See West,
720 S.W.2d at 518-19.                    

  Nonetheless, even if the trial court erred in
admitting appellant’s 1993 conviction for unlawfully carrying a weapon, we
conclude that the error was harmless.  Appellant contends he was harmed because
his conviction for unlawfully carrying a weapon is his only prior conviction
dealing with a weapon.  However, it was undisputed in appellant’s murder trial
that he was carrying a knife the night of the murder, and he stabbed Gims with his
knife.  Further, appellant’s conviction for unlawfully carrying a weapon
occurred 15 years before his murder trial, and was admitted as one of eight
prior convictions.  Appellant did not object to the State’s introduction of his
other prior convictions: (1) driving with a suspended license in 2000; (2)
possession of marijuana in 2000; (3) criminal trespass in 2000; (4) possession
of marijuana in 2001; (5) possession of cocaine in 2002; (6) possession of
cocaine in 2004; and (7) assault with bodily injury in 2007.  Based on these
convictions, we conclude that appellant was not harmed by the trial court’s
admission of his conviction for unlawfully carrying a weapon.  See Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).    

We overrule appellant’s sixth issue.    

Conclusion

We affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Boyce, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
A “present sense impression” is “[a] statement
describing or explaining an event or condition made while the declarant was
perceiving the event or condition, or immediately thereafter.”  Tex. R. Evid.
803(1).  An “excited utterance” is “a statement relating to a startling event
or condition made while the declarant was under the stress of excitement caused
by the event or condition.”  Tex. R. Evid. 803(2).  





[2]
Appellant also
contends that the trial court erred in admitting the two photographs because
appellant did not dispute cause of death.  We reject this contention because
autopsy photographs are admissible even when cause of death is not disputed.  Newbury
v. State, 135 S.W.3d 22, 41-44 (Tex. Crim. App. 2004).

 





[3]
Appellant acknowledges that the photographs
included in the record are black-and-white, but argues that testimony at trial
establishes they were color photographs.  If appellant believed that the colors
in the actual photographs affected analysis of their impact, the original
photographs or color photocopies should have been included in the appellate
record.  See Williams v. State, 958 S.W.2d 186, 196 n.10 (Tex. Crim.
App. 1997) (“If appellant believed that the colors in the actual photographs
would have made a difference in our assessment of prejudice, it was incumbent
upon him to ensure that either the original photographs or color photocopies
were included in the record.”).  We will analyze the exhibits as
black-and-white photographs because that is how they appear in the record on
appeal.